LOCKE LORD LLP
Gregory T. Casamento (*pro hac vice* admission pending)
R. James DeRose, III (*pro hac vice* admission pending)
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
(212) 415-8600
*gcasamento@lockelord.com*
*rderose@lockelord.com*

J. Matthew Goodin (*pro hac vice* admission pending)
111 S. Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0472
*jmgoodin@lockelord.com*

WRIGHT, FINLAY & ZAK, LLP
Darren T. Brenner
Nevada Bar No. 8386
Ramir M. Hernandez
Nevada Bar No. 13146
7785 W. Sahara Avenue, Suite 200
Las Vegas, Nevada 89117
(702) 475-7964; Fax: (702) 946-1345
*dbrenner@wrightlegal.net*
*rhernandez@wrightlegal.net*

*Attorneys for Defendants National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Richard Klein and Raymond Urias, individually and on behalf of all others similarly situated, | Case No.:  2:22-cv-01392-GMN-BNW |
| Plaintiffs, | **MOTION TO DISMISS COMPLAINT** |
| vs. | |

National Collegiate Student Loan Trust aka
National Collegiate Master Student Loan Trust
I, National Collegiate Student Loan Trust 2003-
1, National Collegiate Student Loan Trust 2004-
1, National Collegiate Student Loan Trust 2004-
2, National Collegiate Student Loan Trust 2005-
1, National Collegiate Student Loan Trust 2005-
2, National Collegiate Student Loan Trust 2005-
3, National Collegiate Student Loan Trust 2006-
1, National Collegiate Student Loan Trust 2006-
2, National Collegiate Student Loan Trust 2006-
3, National Collegiate Student Loan Trust 2006-
4, National Collegiate Student Loan Trust 2007-
1, National Collegiate Student Loan Trust 2007-
2, National Collegiate Student Loan Trust 2007-
3, and National Collegiate Student Loan Trust
2007-4,

                    Defendants.

Defendants National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4 (together, the "Trust Defendants"),[1] by and through their attorneys of record, hereby move to dismiss the Complaint ("Complaint") filed by Plaintiffs Richard Klein ("Klein") and Raymond Urias ("Urias") in its entirety pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6).

# I.   **PRELIMINARY STATEMENT**

Plaintiffs' tome of a complaint—spanning 234 paragraphs across 37 pages—is, despite its length, utterly devoid of the substantive factual allegations necessary to survive dismissal. Most notably, the Complaint is a textbook example of impermissible "group pleading;" as both Plaintiffs assert all of their allegations against "Defendants," without ever attempting to specify which of the 15 named Defendants actually engaged in any alleged misconduct. For this reason alone, dismissal

---

[1] The Trust Defendants were incorrectly sued in this action as unknown purported entity (or entities) "NCSLT a/k/a National Collegiate Master Student Loan Trust I, NCSLT 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4."

is warranted under Rule 12(b)(6). Plaintiffs' abject failure to identify which Defendant engaged in the misconduct that injured each of them also requires dismissal pursuant to Rules 12(b)(1) and 12(b)(2) because the Complaint lacks sufficient allegations that Plaintiffs have suffered an injury in fact traceable to each Trust Defendant (necessary to establish Article III standing) or that any of the Trust Defendants engaged in the minimum contacts necessary to be subject to personal jurisdiction in this Court.

The Complaint also fails to set forth sufficient allegations to establish, even at the pleading stage, that Plaintiffs' loans exceeded the cost of attendance so as to make them even *potentially* dischargeable in bankruptcy. All of Plaintiffs' claims are based on and require a threshold demonstration that Plaintiffs' loans were discharged in their bankruptcy proceedings. The extent of Plaintiffs' efforts to make this demonstration is limited to two purely conclusory sentences out of 234 paragraphs, stating that their loans were "higher than the cost of attendance . . .." Compl. ¶¶ 56, 75. There is not a single substantive fact alleged that would allow the Trust Defendants or the Court to determine whether the loans actually did exceed the cost of attendance and are, therefore, dischargeable. Without this, all of Plaintiffs' claims, which are premised on the loans having been discharged, necessarily fail.

Even if Plaintiffs had alleged these kinds of facts, however, their claims would still fail and be subject to dismissal because there is no private right of action to enforce the bankruptcy discharge injunction under 11 U.S.C. § 524 of the Bankruptcy Code. And, courts have routinely rejected "back door" efforts like this one to repackage a claim for violation of the discharge injunction as claims under other statutes. Plaintiffs' state law claims are also preempted by section 524.

Plaintiffs' claims also fail for several additional reasons. Plaintiffs' FCRA claim fails because the Trust Defendants are not "furnishers" of credit information. Plaintiffs' NDTPA claim fails because it is well-established that a loan transaction or attempt to collect on a loan does not concern the sale of a "good or service." Plaintiffs' NDTPA claim also fails to satisfy the requisite pleading standards of Rule 9(b). Additionally, all of Urias' claims are time-barred.

Many of the failings of Plaintiffs' Complaint are legal in nature and could not be remedied by amendment. Accordingly, dismissal with prejudice is appropriate and warranted.

## II.   STATEMENT OF FACTS[2]

### A.  The Trust Defendants And The Student Loans They Own.

The Trust Defendants are 15 different Delaware statutory trusts created between 2001 and 2007 to "acquire a pool of private student loans, to issue notes secured by that pool of student loans, and to service and collect on those student loans." Compl. ¶¶ 41–42. The Trust Defendants "do not act through employees or officers." *Id*. ¶ 45. Instead, they "act through entities that are empowered according to the relevant Trust-Related Agreements to act in the Trusts' name," as well as entities with whom the Trust Defendants contract to perform certain services such as servicing the loans and engaging in collection activities. *Id*. ¶¶ 46–47, 53, 55.

### B.  Plaintiff Klein's Loan, His Bankruptcy, And The Subsequent Collection Activity.

"In or around May 2007," Klein "co-signed on a private student loan for his daughter, who borrowed approximately $5,464." *Id*. ¶ 56. The Complaint is silent as to the identity of the lender, the precise date the loan was obtained, the precise amount of the loan and, most importantly, to which Trust Defendant the loan was eventually assigned.

Plaintiffs allege that the "loan amount was higher than the cost of attendance . . .." (*id*.), but fail to allege key facts such as: (i) which educational institution Klein's daughter attended (with the benefit of the loan proceeds); (ii) for which academic period the proceeds of the loan were used; (iii) what the cost of attendance was at the institution for that academic period; and (iv) information about other aid Klein's daughter received during the relevant academic period, including scholarships, grants, federal loans, and private loans, that might count towards the cost of attendance.

On or about December 13, 2019, after having defaulted on the student loan, Klein commenced a Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the District of Nevada. *Id*. ¶

---

[2] The Trust Defendants assume the truth of Plaintiffs' allegations in the Complaint for purposes of this motion only, and expressly reserve the right to contest them should the Complaint survive this motion to dismiss.

1  57. Plaintiffs allege that the loan owed to "Defendants" was scheduled in Klein's bankruptcy

2  filings. Compl. ¶ 58. On or about March 17, 2020, Klein allegedly received a bankruptcy discharge

3  under 11 U.S.C. § 727. *Id*. ¶ 62. Plaintiffs allege that "Defendants did not file any proceedings to

4  declare their alleged debts 'non-dischargeable' pursuant to 11 U.S.C. § 523 et seq." *Id*. ¶ 60.

5  Plaintiffs allege that, as a result, Klein's "personal liability for the private student loan[] was

6  discharged in his bankruptcy proceeding." *Id*. ¶ 63.

7  After his bankruptcy discharge, Klein allegedly "received numerous communications from

8  Defendants attempting to collect on" the student loan. *Id*. ¶ 64. In these communications,

9  unspecified "Defendants" allegedly represented that the loan was not discharged and that Klein

10  still owed the debt, and "threatened to take legal action against" him if failed to pay the loan. *Id*.

11  ¶¶ 65–66. Klein alleges that he "eventually paid over $5,000" to satisfy the outstanding balance of

12  the loan. *Id*. ¶ 67. Additionally, Plaintiffs allege that "Defendants inaccurately reported the debt

13  on [Klein's] credit report with a status of 'Transferred; was Charged-off' and with remarks of

14  'Transferred to Another Lender; Unpaid Balance Charged Off,'" after the bankruptcy discharge.

15  *Id*. ¶ 69. On or around July 6, 2022, Klein allegedly "disputed the inaccurate reporting pursuant to

16  15 U.S.C. § 1681li, by notifying Trans Union, in writing, of the inaccurate, misleading, and

17  derogatory information." *Id*. ¶ 199. Plaintiffs allege that, after Klein disputed the reporting,

18  unspecified "Defendants" failed to conduct a reasonable investigation and correct the allegedly

19  inaccurate reporting. *Id*. ¶¶ 201–209.

20  **C.  Plaintiff Urias' Loan, His Bankruptcy, And The Subsequent Collection Activity.**

21  "In or around August 2006," Urias "co-signed on a private student loan for his nephew,

22  who borrowed approximately $10,000." *Id*. ¶ 75. The Complaint is silent as to the identity of the

23  lender, the precise date the loan was obtained, the precise amount of the loan and, most

24  importantly, to which Trust Defendant the loan was eventually assigned.

25  Plaintiffs allege that the "loan amount was higher than the cost of attendance . . .." (*id*.),

26  but fail to allege key facts such as: (i) which educational institution Urias' nephew attended (with

27  the benefit of the loan proceeds); (ii) for which academic period the proceeds of the loan were

28  used; (iii) what the cost of attendance was at the institution for that academic period; and (iv)

1  information about other aid Urias' nephew received during the relevant academic period, including

2  scholarships, grants, federal loans, and private loans, that might count towards the cost of

3  attendance.

4      On or about December 9, 2011, Urias commenced a Chapter 7 bankruptcy in the U.S.

5  Bankruptcy Court for the District of Nevada. Compl. ¶ 76. Plaintiffs allege that the loan owed to

6  "Defendants" was scheduled in Urias' bankruptcy filings. *Id.* ¶ 77. On or about March 13, 2012,

7  Urias allegedly received a bankruptcy discharge under 11 U.S.C. § 727. *Id.* ¶ 81. Plaintiffs allege

8  that "Defendants did not file any proceedings to declare their alleged debts 'non-dischargeable'

9  pursuant to 11 U.S.C. § 523 et seq." *Id.* ¶ 79. Plaintiffs allege that, as a result, Urias' "personal

10 liability for the private student loan[] was discharged in his bankruptcy proceeding." *Id.* ¶ 82.

11     "At some point in time" after Urias' bankruptcy discharge, "Defendants" allegedly filed a

12 lawsuit against Urias in the Eighth Judicial District Court, Clark County, Nevada to collect the

13 outstanding balance of the student loan. *Id.* ¶ 83. "Defendants" allegedly received a judgment

14 against Urias in 2014 and allegedly began to garnish his wages in an attempt to satisfy the

15 judgment. *Id.* ¶ 84. The Complaint is conspicuously vague as to when Urias paid the judgment

16 against him, stating that he "*eventually* paid the full amount of the judgment, approximately

17 $18,000, to Defendants . . .." *Id.* ¶ 85 (emphasis added). The publicly filed records in the state

18 court action against Urias show, however, that a Satisfaction of Judgment was filed in 2015. *See*

19 Exhibit ("Ex.") A.

20              **III.    LEGAL STANDARDS**

21     For a federal court to have subject matter jurisdiction, Plaintiffs must demonstrate standing

22 under Article III of the Constitution. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115,

23 1122 (9th Cir. 2010). The standing inquiry turns on "whether the plaintiff can allege an 'injury-in-

24 fact' he or she suffered as a result of the defendant's alleged misconduct." *In re Consol. Meridian*

25 *Funds*, 485 B.R. 604, 610 (Bankr. W.D. Wash. 2013) (citing *Lujan v. Defenders of Wildlife*, 504

26 U.S. 555, 560–61 (1992)). "Because standing pertains to a federal court's subject matter

27 jurisdiction, a motion to dismiss for lack of standing is properly brought as a motion to dismiss for

28 lack of subject matter jurisdiction under Rule 12(b)(1) . . .." *Id.* (citing *White v. Lee*, 227 F.3d 1214,

1242 (9th Cir. 2000)). "When faced with a Rule 12(b)(1) motion, the plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction." *In re Consol. Meridian Funds*, 485 B.R. at 610 (citing *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996)).

Rule 12(b)(2) mandates dismissal if the court lacks personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). A defendant may be subject to either the court's general jurisdiction or specific jurisdiction. *See Daimler v. Bauman*, 571 U.S. 117, 119 (2014). "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum." *Angel Prods. Worldwide, Inc. v. Airstage by Effeckt-Technik, GmbH*, 426 F. Supp. 3d 630, 633 (D. Nev. 2019). General jurisdiction over a corporate entity exists "where the company has either been incorporated or where it has its principal place of business. *Id.* (citing *Daimler*, 571 U.S. at 119). For specific jurisdiction to exist:

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiffs bear the burden of demonstrating that each of these requirements is met. *See id.*; *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Finally, to survive a motion under Rule 12(b)(6), a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A complaint must be dismissed if it merely "tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "Mere legal conclusions are not entitled to the assumption of truth," and the complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (internal quotations and citations

omitted). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   ARGUMENT

Plaintiffs fail to satisfy nearly every single pleading requirement, assert claims that are preempted and/or prohibited by the Bankruptcy Code, and rely on statutes that plainly do not apply to the alleged conduct. For these reasons, and as set forth below, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

### A.   The Complaint's Improper Reliance On Group Pleading Requires Dismissal.

Plaintiffs fail to allege a key fact in this case: which of the 15 Trust Defendants actually engaged in the misconduct that purportedly injured Klein and Urias. Instead of identifying which Trust Defendant(s) allegedly harmed them, Plaintiffs named 15 different trusts as defendants and assert ***all*** of their allegations against the collective "Defendants." *See, e.g.*, Compl. ¶ 64 ("After receiving his bankruptcy discharge, Richard received numerous communications from *Defendants* attempting to collect on the private student loan debt . . ..") (emphasis added), ¶ 67 ("Richard eventually paid over $5,000 to *Defendants* . . ..") (emphasis added), ¶ 74 ("Richard's credit worthiness was also negatively impacted as a result of *Defendants'* unlawful behavior . . ..") (emphasis added), ¶ 85 ("Raymond eventually paid the full amount of the judgment . . . to *Defendants* . . ..) (emphasis added); ¶ 87 ("As a result of *Defendants'* unlawful conduct, Raymond has experienced emotional distress . . ..) (emphasis added).

### 1.   Plaintiffs Fail To Establish Subject Matter Jurisdiction

To establish subject matter jurisdiction and Article III standing, Plaintiffs must adequately plead that their injuries were caused by the Trust Defendants. *See TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560–61). Because there are multiple plaintiffs and multiple defendants, Plaintiffs must demonstrate that at least one of them was injured by each Trust Defendant. *See Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015).

There are 15 Trust Defendants, and only one of them could have caused each Plaintiff's alleged injuries. Each Plaintiff only had one student loan. Compl. ¶¶ 48, 56, 75. Each loan is owned by only one of the Trust Defendants, which is the Trust Defendant on whose behalf the loan was serviced and on whose behalf any collection activity was taken. *See Hoffman v. Transworld Sys. Inc., et al.*, No. 18-1132, 2021 WL 22590, at *2 (W.D. Wash. Jan. 4, 2021); *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 127 (Del. Ch. 2020). Thus, at most, only one of the Trust Defendants could have engaged in the supposed misconduct injuring each Plaintiff, and each Plaintiff only has standing to sue that particular Trust. *See Browne v. Nat'l Collegiate Student Loan Tr.*, No. CV2111871KMJSA, 2021 WL 6062306, at *3, n.4 (D.N.J. Dec. 22, 2021) ("Assuming that the trusts are independent legal entities, Browne can only bring his own claim against the specific trust that held his loan. He would have no standing to sue or cause of action against the other trusts, with which he did not interact in any manner."); *Hoffman*, 2021 WL 22590, at *2 (dismissing, based on lack of standing, nine of the NCSLTs that did not own or take any action related to any of the named Plaintiffs' loans).

Plaintiffs fail to allege which of the Trust Defendants injured each of them, instead opting to plead (implausibly and conclusorily) that *all* "Defendants" engaged in *all* the alleged misconduct causing Plaintiffs' injuries. Accordingly, the Complaint fails to adequately allege that any particular Trust Defendant caused any particular Plaintiff an injury in fact, and the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

2.  <u>Plaintiffs Fail To Establish Personal Jurisdiction.</u>

Plaintiffs' allegations make it clear that only one or two Trust Defendants were actually involved with their loans. Plaintiffs' collective allegations against *all 15 Trust Defendants*, however, fail to connect any specific Trust Defendant to the alleged misconduct. Accordingly, Plaintiffs fail to adequately allege that any of the Trust Defendants engaged in "continuous and systematic" business in, or "purposely availed" themselves of, this forum and the Complaint must be dismissed as to all Trust Defendants for lack of personal jurisdiction pursuant to Rule 12(b)(2). *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (with regard to establishing existence of specific personal jurisdiction over nonresident defendant, if plaintiff fails to show that defendant

1    (i) purposely availed himself of privilege of conducting activities in the forum state, or (ii)

2    purposefully directed his activities at forum or resident, jurisdictional inquiry ends and case must

3    be dismissed.).[3]

4              3.    The Complaint Fails To Meet Required Federal Pleading Standards.

5              Even if Plaintiffs' Complaint could establish subject matter jurisdiction or personal

6    jurisdiction (which it cannot), the Complaint should be dismissed because it is a classic example

7    of the kind of "group pleading" that is impermissible under the pleading standards of Rule 8(a),

8    *Twombly*, and *Iqbal*. *See, e.g.*, Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at

9    555. The Complaint's "shotgun" approach, baselessly alleging all misconduct against all of the

10   "Defendants," deprives each named Trust Defendant "of knowing exactly what [it is] accused of

11   doing wrong." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL

12   2674456, at *4 (C.D. Cal. June 30, 2010) (dismissing complaint "where the plaintiff uses the

13   omnibus term 'Defendants' throughout . . . without identifying what the particular defendants

14   specifically did wrong."). The Complaint's "failure to differentiate between the various

15   Defendants is inadequate" to state a claim upon which relief may be granted. *Aquilina v. Certain

16   Underwriters at Lloyd's*, 407 F. Supp. 3d 978, 996 (D. Haw. 2019). Accordingly, Plaintiffs' group

17   pleading also compels dismissal of the Complaint under Rule 12(b)(6).

18   **B.    Each Of Plaintiffs' Claims Is An Improper Attempt To Avoid The Lack Of A**
19        **Private Right Of Action For Violation Of A Discharge Injunction.**

20             Instead of raising their concerns in their bankruptcy proceedings, Plaintiffs filed this action.

21   Plaintiffs' hodgepodge of claims here is either preempted or prohibited by, or seeks remedies not

22   permitted by, section 524 of the Bankruptcy Code. The Court should reject Plaintiffs' blatant

23   _____

24   [3] Plaintiffs' boilerplate, conclusory allegations that "This Court has personal jurisdiction over
     Defendants through their business operations in this District . . ." (Compl. ¶ 22), are plainly
25   insufficient. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[C]onclusory allegations
     that '[defendants] directed communication into the U.S. Western District of Washington and
26   otherwise conducted business therein sufficient to establish minimum contacts within the forum
     that support the exercise of jurisdiction over their persons by this Court' are insufficient to establish
27   a prima facie showing of personal jurisdiction.").

28

attempt to evade the lack of a private right of action for violation of the discharge injunction and dismiss Plaintiffs' misguided effort to assert the wrong claims in the wrong court at the wrong time.

         1.     <u>There Is No Private Right Of Action For Violation Of 11 U.S.C. § 524.</u>

Section 524 of the Bankruptcy Code states that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . .." 11 U.S.C. § 524(a)(2). The Ninth Circuit has repeatedly held that there is no private right of action to enforce bankruptcy discharge injunctions issued pursuant to section 524 of the Bankruptcy Code. *See, e.g.,* *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504 (9th Cir. 2002) (affirming dismissal of putative class action alleging violation of bankruptcy discharge injunction by attempting to collect debt after it had been discharged, explaining that "a private cause of action is not available under § 524 . . ..."); *Gryglak v. HSBC Bank USA, N.A.*, No. 217CV1514JCMNJK, 2018 WL 10456273, at *4 (D. Nev. Feb. 23, 2018) (citing *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011) ("Plaintiff cannot maintain a private right of action for violations of § 524."). Plaintiffs' Third Cause of Action, which seeks damages and injunctive relief for violation of section 524, should be dismissed on this basis.

         2.     <u>Courts Do Not Permit "Back Door" Attempts To Assert A Claim For Violation of 11 U.S.C. § 524.</u>

The Ninth Circuit and district courts therein have repeatedly held that a court cannot "allow through the back door what [the plaintiff] cannot accomplish through the front door—a private right of action." *Walls*, 276 F.3d at 510. In other words, "because the Bankruptcy Code provides no private right of action for violation of a bankruptcy court's discharge order, a plaintiff cannot bring a functionally equivalent claim" in an attempt to sidestep the prohibition against a private right of action for damages under the Code. *Chaney v. Bayview Loan Servicing, LLC*, No. 216CV01418APGCWH, 2017 WL 3836122, at *1 (D. Nev. Mar. 14, 2017); *see also Berkowitz v. Bayview Loan Servicing, LLC*, No. 2:13–cv–00759–JAD, 2014 WL 3734370, at * 3 (D. Nev. July 25, 2014). Plaintiffs' First Cause of Action, for violations of the Fair Credit Reporting Act

("FCRA") on behalf of Plaintiff Klein, is nothing more than a thinly-veiled attempt to disguise a claim for violation of a discharge injunction as a claim for violation of the FCRA. Both claims seek damages for attempts to collect—whether directly, or indirectly through credit reporting—on loans that "were discharged in [Klein]'s . . . bankruptc[y]." Compl. ¶ 209. Such a claim is prohibited and should be dismissed.

3.    Plaintiffs' State Law Claims Are Preempted By 11 U.S.C. § 524.

Plaintiffs' Second Cause of Action for unjust enrichment and Fourth Cause of Action for violations of the Nevada Deceptive Trade Practices Act ("NDTPA") should both be dismissed because they are preempted by section 524. "The courts have uniformly held that federal law provides the sole remedy for violation of § 524 and that all state-law claims are preempted." *In re Bassett*, 255 B.R. 747, 758–59 (B.A.P. 9th Cir. 2000), *aff'd in part, rev'd on other grounds*, 285 F.3d 882 (9th Cir. 2002); *see also Church v. OneWest Bank FSB*, 2011 WL 2444719, at *8 (D. Or. Jan. 18, 2011) (A claim is preempted by the Code if it "requires a determination of whether [a] debt was properly discharged in plaintiff's . . . bankruptcy proceeding, and whether the post-bankruptcy collection efforts violated section 524's discharge injunction."); *In re Johnston*, 362 B.R. 730, 737 (Bankr. N.D. W. Va. 2007) (collecting cases).

Here, the crux of Plaintiffs' unjust enrichment and NDTPA claims is that Plaintiffs' debts were allegedly "properly discharged" in their bankruptcies, and "the post-bankruptcy collection efforts violated section 524's discharge injunction." Compl. ¶¶ 220, 228. Accordingly, these claims are preempted by section 524 and should be dismissed. *See, e.g., In re Chausee*, 399 B.R. 225, 234 (B.A.P. 9th Cir. 2008) (dismissing claim under Washington Consumer Protection Act); *Goad v. MCT Grp.*, No. 09-cv-1321 BTM (POR), 2010 WL 1407257, at *3 (S.D. Cal. Apr. 6, 2010) (dismissing claim under California's Rosenthal Fair Debt Collection Practices Act); *In re Johnston*, 362 B.R. at 739 (dismissing claim under West Virginia Consumer Credit and Protection Act); *Cox. v. Zale Del., Inc.*, 242 B.R. 444, 450 (N.D. Ill. 1999) (dismissing unjust enrichment claim).

C. **Plaintiffs' Claims Fail For Additional Reasons.**

    1.   <u>Plaintiffs Do Not Adequately Allege Their Loans Were Discharged</u>.

Each of Plaintiffs' claims is based on the allegation that Plaintiffs' student loan debt was discharged as part of their bankruptcy proceedings. *See, e.g.*, Compl. ¶ 181. But, Plaintiffs come nowhere near alleging facts sufficient to plausibly plead that their loans were, in fact, discharged.

"It is well-settled law that student loan debts are presumptively nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)." *In re Hoxie*, 370 B.R. 288, 290 (S.D. Cal. 2006) (quoting *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004)); *see also In re Tingling*, 990 F.3d 304, 308 (2d Cir. 2021); *Kaetz v. Educ. Credit Mgmt. Corp.*, No. 2:16-CV-09225, 2019 WL 4745289, at *6 (D.N.J. Sept. 30, 2019), *aff'd*, No. 20-2592, 2022 WL 996422 (3d Cir. Apr. 4, 2022); *In re Braun*, 609 B.R. 810, 814 (Bankr. E.D. Wis. 2019); *In re Engen*, 561 B.R. 523, 540 (Bankr. D. Kan. 2016). Thus, Plaintiffs cannot simply proclaim their loans were discharged in a conclusory allegation; to survive a motion to dismiss, they must allege facts that make a plausible showing of why their student loans fall within one of the narrow categories of student loans that could potentially be discharged in bankruptcy. *See* 11 U.S.C. § 523(a)(8).

Plaintiffs' theory appears to be that their student loans were dischargeable in bankruptcy because they are for amounts "higher than the cost of attendance." Compl. ¶¶ 56, 75. But, Plaintiffs do not allege any facts to support this conclusory allegation. Plaintiffs allege the amounts of the relevant loans—$5,464 for Plaintiff Klein (Compl. ¶ 56) and "approximately $10,000" for Plaintiff Urias (*Id.* ¶ 75)—but do not allege anything else. They fail to allege, for example, what educational institutions Klein's daughter and Urias' nephew attended, what semester(s) the loans were obtained and used to pay for, what Klein's daughter's and Urias' nephew's costs of attendance at the institutions were during those semesters, and what other aid—including scholarships, grants, federal loans, and private loans—they may have received during those relevant semesters. Plaintiffs' failure to allege any facts showing how or why their student loans were for amounts higher than the cost of attendance makes it impossible for the Trust Defendants or the Court to determine whether the conclusory allegation is plausible. *See cf. In re Golden*, 596 B.R. 239, 246 (Bankr. E.D.N.Y. 2019) (finding complaint sufficient to state a claim where it alleged all of the

facts above).[4] Plaintiffs' purely conclusory assertion that their loans were "higher than the cost of attendance" is not sufficient to meet their burden to plausibly plead that the loans were dischargeable. Accordingly, each of their claims—which all rely on the loans being dischargeable—must be dismissed.

2.   The NDTPA Does Not Apply To The Conduct Alleged In The Complaint, And Plaintiffs' NDTPA Claim Is Inadequately Pled.

Plaintiffs' NDTPA claim fails as a matter of law because Chapter 598 of the NDTPA only applies to "transactions involving goods and services, not debt collection activities." *Kervin v. GC Servs., Ltd. P'ship*, No. 2:13-CV-01461-MMD, 2014 WL 584966, at *2 (D. Nev. Feb. 12, 2014) (dismissing NDTPA claim based on alleged violations in attempting to collect on plaintiff's "debt for her student loans that was purchased, assigned or transferred to" defendant.).[5] Accordingly, Plaintiffs' NDTPA claim should be dismissed with prejudice.

In addition, Plaintiffs fail to plead their NDTPA claim with the particularity required by Rule 9(b). Claims for deceptive trade practices under the NDTPA "are subject to a heightened pleading requirement, which requires that a party state with particularity the circumstances constituting fraud." *Kervin*, 2014 WL 584966, at *2; *see also Partie v. Ethicon, Inc.*, No. 2:21-CV-1366 JCM (BNW), 2022 WL 2390545, at *5 (D. Nev. July 1, 2022). The complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Kervin*, 2014 WL 584966, at *2 (quoting *Sanford v.*

---

[4] *Id.* ("The Amended Complaint states that Ms. Golden attended the University of Pennsylvania Law School . . . during the 2006-07 academic year. And she alleges that the University of Pennsylvania's 'cost of attendance' for that academic year was $53,500. Ms. Golden received $22,440 in scholarship funds and grants from the University of Pennsylvania, and she borrowed $27,500 in loans from the federal government. She alleges that she borrowed an additional $7,103 in private loans from National Collegiate Trust – the NCT Loan – and that the NCT Loan was serviced by PHEAA.").

[5] *See also Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 972 (9th Cir. 2017) (loan was neither good nor service within meaning of NDTPA); *Peatrowsky v. Persolve*, No. 2:12-cv-00935-JAD-VCF, 2014 WL 1215061, at *5 (D. Nev. Mar. 24, 2014) (dismissing NDTPA claim because the debt collecting activities were not related to goods or services); *Lee v. BAC Home Loans Servicing, LP*, Case No. 2:11–cv–1583, 2011 WL 5827202, at *3 (D. Nev. Nov. 18, 2011); *Lalwani v. Wells Fargo Bank, N.A.*, Case No. 2:11–cv–0084, 2011 WL 4574338, at *2 (D. Nev. Sept. 30, 2011).

*MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010)). Plaintiffs' Complaint, however, does not state any specific facts concerning when the Trust Defendants allegedly violated the NDTPA or the content of the supposedly false representations. Plaintiffs do not even specify what actions of the Trust Defendants allegedly violated the NDTPA. Plaintiffs' failure to plead their NDTPA claims with the particularity required by Rule 9(b) is yet another reason that the NDTPA claim should be dismissed.

> 3.   The FCRA Claim Should Be Dismissed Because The Trust Defendants Are Not Furnishers Of Credit Information.

Klein's FCRA claim alleging violation of 15 U.S.C. § 1681s–2(b) also fails as a matter of law. A claim under 15 U.S.C. § 1681s–2(b) can only be asserted against a "furnisher" of credit information. *Pauli v. CIT Bank, N.A.*, No. 2:17–CV–167 JCM (VCF), 2017 WL 2381275, at \*2–3 (D. Nev. June 1, 2017). While the FCRA does not define "furnisher," courts generally define it as "an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies . . .." *Shaw v. Experian Info. Sols., Inc.*, 49 F. Supp. 3d 702, 704 n.1 (S.D. Cal. 2014) (quoting *Gonzalez–Bencon v. Doral Bank*, 759 F. Supp. 2d 229, 233 n.1 (D.P.R. 2010)). Notably, a defendant is *not* a furnisher of information where it contracts with another entity for "collections services," which include "reporting the Debt against the [borrower's] credit score to the three credit bureaus . . .." *Karony v. Dollar Loan Ctr., LLC*, No. 2:10-CV-00804, 2010 WL 5186065, at \*1–2 (D. Nev. Dec. 15, 2010).

Here, by Plaintiffs' own allegations, the Trust Defendants are not "furnishers" of credit information because they contract with other parties to service and collect on the loans they own, including reporting to the credit reporting agencies. *See, e.g.*, Compl. ¶ 46 ("Defendants act through entities that are empowered according to relevant Trust-Related Agreements to act in the Trusts' name."); ¶ 53 ("The Trusts engage in regular servicing of these student loans through certain designated entities."); ¶ 55 ("The Trusts also engage in delinquent or default servicing and debt collection activities through certain designated entities, and contract with subservicers to

1  assist in these activities.").[6] Accordingly, 15 U.S.C. § 1681s–2(b) does not apply to the Trust

2  Defendants and Klein's FCRA claim should be dismissed with prejudice.

3          4.    <u>Plaintiff Urias' Claims Are Time-Barred</u>.

4        The statutes of limitations for the claims Urias asserts are four years for unjust enrichment[7]

5  and the NDTPA[8], and either four or six years for violation of 11 U.S.C. § 524.[9] Each of Urias'

6  claims are purportedly based on "Defendants' actions in pursuing and obtaining a judgment against

7  [him] in order to garnish him and collect on the private student loan debt . . .." Compl. ¶ 86. The

8  judgment against Urias was satisfied in 2015 (*see* Ex. A), and not surprisingly, he does not allege

9  that any of the Trust Defendants continued to attempt to collect, or actually did collect, on his loan

10  debt after 2015.[10] Thus, each of his causes of action accrued **seven years ago** in 2015. The

11  Complaint was filed in August 2022, well beyond the applicable four and six year statutes of

12

13  [6] The Court can and should disregard Plaintiffs' conclusory allegation that the Trust Defendants
14  "are furnishers of information as contemplated by FCRA sections 1681s-2(a) & (b) . . ." (Compl.
   ¶ 28), as nothing more than a "formulaic recitation of the elements of a cause of action" which the
15  Supreme Court has rejected as insufficient. *Twombly*, 550 U.S. at 555.

16  [7] *See, e.g.,* Nev. Rev. Stat. § 11.190(2)(c)); *see also In re Amerco Derivative Litig.*, 127 Nev. 196,
   252 P.3d 681, 703 (2011); *Wilmington Tr., N.A., as Trustee of ARLP Securitization Tr., Series*
17  *2014-2 v. Saticoy Bay LLC Series 206 Valerian*, 416 F. Supp. 3d 1077, 1088 (D. Nev. 2019).

18  [8] *See, e.g.,* Nev. Rev. Stat. § 11.190(2)(d); *see also, e.g., Sears v. Russell Rd. Food & Beverage,*
   *LLC*, 460 F. Supp. 3d 1065, 1070 (D. Nev. 2020).
19
   [9] The Bankruptcy Code does not contain a statute of limitations for claims brought thereunder.
20  There does not appear to be any caselaw applying a statute of limitations to a claim for violation
   of the bankruptcy court's discharge injunction—likely because no private right of action to bring
21  such a claim exists. When a federal statute lacks a limitations period, some courts apply the
   "catchall federal four-year statute of limitations codified at 28 U.S.C. § 1658 . . .." *Collier v.*
22  *Washington*, 551 B.R. 249, 257–58 (W.D. La. 2016). Other courts apply "the state law limitations
   governing an analogous cause of action." *In re Newcomer*, 416 B.R. 166, 173–74 (D. Md. 2009)
23  (quoting *Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483–84 (1980)).
24  Nevada's most analogous statute of limitations provides that "an action upon a judgment or decree
   of any court of the United States, or of any state or territory within the United States, or the renewal
25  thereof," must be brought within six years. Nev. Rev. Stat. Ann. § 11.190 (West).

26  [10] The Court may take judicial notice of the Satisfaction of Judgment. *See Jones v. Wirth*, No. 16-
27  cv-00243, 2017 WL 2453028, at *2 (D. Nev. June 6, 2017) (holding that a court may take judicial
   notice of "publicly-filed court records whose contents are either alleged in or central to the
28  Complaint" without converting a motion to dismiss into one for summary judgment).

1  limitation. Therefore, each of Urias' claims is time barred and all claims asserted by Urias should
2  be dismissed. *Est. of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997) (upholding
3  dismissal based on statute of limitations where "all facts necessary to decide" that the claim was
4  untimely were "in the record," in the "pleadings themselves" and documents of which the court
5  took judicial notice).

6  ## V.   CONCLUSION

7        For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety with
8  prejudice and without opportunity to amend, and the Court should award all other relief to the
9  Trust Defendants as it deems just and proper.

10        DATED this 9th day of November, 2022.

11        LOCKE LORD LLP

12        */s/ Gregory T. Casamento*
13        Gregory T. Casamento (*pro hac vice* admission pending)
      R. James DeRose, III (*pro hac vice* admission pending)
14        Brookfield Place
15        200 Vesey Street, 20th Floor
      New York, New York 10281
16        (212) 415-8600
17        *gcasamento@lockelord.com*
      *rderose@lockelord.com*

18        J. Matthew Goodin (*pro hac vice* admission pending)
19        111 S. Wacker Drive, Suite 4100
20        Chicago, Illinois 60606
      (312) 443-0472
21        *jmgoodin@lockelord.com*

22        WRIGHT, FINLAY & ZAK, LLP

23        */s/ Ramir M. Hernandez*
24        Ramir M. Hernandez, Esq.
      Nevada Bar No. 13146
25        Darren T. Brenner
      Nevada Bar No. 8386
26        7785 W. Sahara Avenue, Suite 200
27        Las Vegas, Nevada 89117
      (702) 475-7964; Fax: (702) 946-1345
28        *rhernandez@wrightlegal.net*

dbrenner@wrightlegal.net

*Attorneys for Defendants National Collegiate Master Student Loan Trust I, National Collegiate Student Loan Trust ("NCSLT") 2003-1, NCSLT 2004-1, NCSLT 2004-2, NCSLT 2005-1, NCSLT 2005-2, NCSLT 2005-3, NCSLT 2006-1, NCSLT 2006-2, NCSLT 2006-3, NCSLT 2006-4, NCSLT 2007-1, NCSLT 2007-2, NCSLT 2007-3, and NCSLT 2007-4*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I am an employee of WRIGHT, FINLAY & ZAK, LLP and that I served the foregoing **MOTION TO DISMISS COMPLAINT** on the 9th day of November, 2022, to all parties on the CM/ECF service list.


*/s/ Lisa Cox*
An Employee of WRIGHT, FINLAY & ZAK, LLP

**<u>EXHIBIT LIST</u>**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| A | Urias Satisfaction of Judgment |