George Haines, Esq.
Nevada Bar No. 9411
Gerardo Avalos, Esq.
Nevada Bar No. 15171
**FREEDOM LAW FIRM**
8985 S. Eastern Ave., Suite 350
Las Vegas, NV 89123
Tele. 702.880.5554
E-fax: 702.967.6666
Email: info@freedomlegalteam.com
*Attorneys for Plaintiffs Richard Klein, Raymond Urias, Sandra Gunter and all others similarly situated*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| Richard Klein, Raymond Urias and Sandra J. Gunter, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>-vs.-<br><br>National Collegiate Student Loan Trust 2005-3; National Collegiate Student Loan Trust 2006-3; National Collegiate Student Loan Trust 2007-1; National Collegiate Student Loan Trust 2007-2; National Collegiate Student Loan Trust 2007-3; National Collegiate Student Loan Trust 2007-4; Pennsylvania Higher Education Assistance Agency d/b/a American Education Services; and Transworld Systems, Inc.<br>Defendants. | CASE NO: 2:22-cv-01392-GMN-BNW<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

1. Defendants have misled student debtors by disguising dischargeable consumer loans as non-dischargeable student loans in order to discourage debtors from seeking their constitutional right to relief under Title 11 of the United States Code.

2. This has allowed the Defendants to collect on discharged student loans after bankruptcy. In order to effectuate this scheme, Defendants and other student lenders and creditors

have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the Bankruptcy Code to cloak their deceptive actions in the color of law.

3.     Defendants in this action willfully and maliciously engaged in a pattern and practice that they know defiles the proper working of the bankruptcy process.

4.     Through unlawful credit reporting, Defendants have used and/or conspired with credit reporting agencies to further their unlawful goals of collecting on discharged consumer debts.

5.     By reporting discharged consumer debts on Plaintiffs' and class members' credit reports, Defendants have made it more difficult for Plaintiffs and class members to raise their credit scores and improve their credit worthiness.

6.     These unlawful practices and collection actions have caused Plaintiffs to bring this action to enforce their rights and the rights of others similarly situated under law.

**JURISDICTION AND VENUE**

7.     Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims.

8.     This Court has personal jurisdiction over Defendants through their business operations in this District, the specific nature of which occurs in this District.

9.     Defendants intentionally availed themselves of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred within this District, and because Plaintiffs reside in this District.

**PARTIES**

11. Plaintiffs are natural persons residing in Nevada.

12. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

13. The Class Members are similarly situated individuals who have declared bankruptcy since 2005 in the various districts of the United States with loans originated and/or serviced by Defendants which do not meet the definition of a non-dischargeable qualified education loan in 26 U.S.C. § 221(d), I.R.C. § 221(d), and 11 U.S.C. § 523(a)(8)(B).

14. Defendant National Collegiate Trust is a business located in the State of Massachusetts that regularly conducts commercial activity in this District and can be served through its agent, Transworld Systems, Inc., located at P.O. Box 4275, Norcross, GA, 30091.

15. Defendant National Collegiate is comprised of 15 Trusts.

16. Upon information and belief, the Trusts which likely "hold" the Plaintiffs' loans are one or several of the following Trusts: National Collegiate Student Loan Trust 2005-3; National Collegiate Student Loan Trust 2006-3; National Collegiate Student Loan Trust 2007-1; National Collegiate Student Loan Trust 2007-2; National Collegiate Student Loan Trust 2007-3; and/or National Collegiate Student Loan Trust 2007-4.

17. The various National Collegiate Trusts are "covered persons" under the Consumer Financial Protection Act ("CFPA").

18. Pennsylvania Higher Education Assistance Agency ("PHEAA") d/b/a American Assistance Services is a Pennsylvania public corporation and government instrumentality that regularly conducts commercial activity in this District and has its principle place of business in Harrisburg, Pennsylvania.

19. Transworld System, Inc., is a debt collection agency that regularly conducts commercial activity in this District and has its principle place of business in Fort Washington, Pennsylvania.

20. Defendants are furnishers of information as contemplated by Fair Credit Reporting Act §§ 1681s-2(a) & (b), which regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies ("CRAs") about consumer transactions or experiences with consumers.

**FAIR CREDIT REPORTING ACT**

21. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system.

22. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

23. The FCRA seeks to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and with respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

24. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

25. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness.

26. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This belief is not true.

27. The majority of consumer debtors who actually file for consumer bankruptcy relief do so to raise their credit scores and remedy their poor credit worthiness.

28. It is entirely possible for consumer debtors to achieve a FICO Score of over 700 within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

29. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

30. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies, and debts included in those bankruptcies, in an effort to keep consumers' credit scores low and their interest rates high.

31. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

32. In addition, there is also the bankruptcy myth that education loans cannot be discharged in bankruptcy.

33. However, some private loans for educational purposes can be discharged in a normal bankruptcy proceeding, just like most other consumer debts.

## DISCHARGING PRIVATE STUDENT LOANS IN BANKRUPTCY

### Section 523(a)(8) of the Bankruptcy Code

34. In 1978, Congress enacted Section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship) to address a growing concern that students were taking

advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation.

35.   11 U.S.C. § 523(a)(8) excluded from bankruptcy discharge government loans that became due more than five years prior to the bankruptcy petition, repayment of which would not cause "undue hardship" on the debtor.

36.   Later amendments lengthened and then eliminated the five-year non-dischargeability time frame for loans by the federal government, making it increasingly difficult for debtors to discharge their student loan debts.

37.   In 2005, after extensive lobbying, private education lenders and debt collectors won limited protection in bankruptcy for some of their educational loan products. Specifically, the Bankruptcy Abuse and Consumer Protection Act, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA") expanded the definition of non-dischargeable student debt to include "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. §523(a) (8) (B). Thus, Congress limited protection to private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").

38.   Qualified Education Loans are defined by Section 221(d)(1) of the Internal Revenue Code of 1986 (26 U.S. C. §221(d)(1)) as debts incurred by eligible students, at eligible institutions, for eligible education expenses. Thus, a "qualified higher education expense" is one that is used to pay for the cost of attendance at a qualified educational institution. 26 U.S.C. §221(d)(2).

39. Private lending initially mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which ensured the funds were used only for qualified higher education expenses.

40. Seemingly, commercial lenders wanted to push the envelope and were not satisfied with the origination volume of Qualified Education Loans. Thereafter, these lenders initiated new "non-qualified" education loan programs to high school students, students at unaccredited trade schools and colleges, recovering alcoholics and drug addicts in rehabilitation programs, and direct-to-consumer ("DTC") loans to students at eligible schools for more than the "cost of attendance."

41. DTC loans do not require school certification, and so can be originated in amounts far exceeding federal borrowing limits. Moreover, qualified loans must be made solely for qualified education expenses, so while some portion of a DTC loan may fall within the "Cost of Attendance" if any portion of the DTC loan is outside of the "Cost of Attendance" it becomes a "mixed-use" loan and is not a true qualified education loan. Such non-qualified DTC loans are simply another form of unsecured consumer debt, like student credit card debt, and are discharged automatically upon entry of a discharge order in a consumer bankruptcy case.

42. Prior to the 2005 amendment to the Bankruptcy Code, Section 523(a)(8) was easy to apply because essentially all student loans were issued by the federal government under strict guidelines for presumptive non-dischargeability in bankruptcy. Thus, if a student loan was issued or guaranteed by the federal government, it was presumptively non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable.

43. However, as discussed above, the 2005 amendments expanded Section 523(a)(8) to encompass some private loans that did not previously fall within the scope of presumptive non-dischargeability under Section 523(a)(8).

44.     Nevertheless, the assumption that all student debt is presumptively non-dischargeable continued and Defendants and other creditors used that common but inaccurate belief to deceive debtors into making payments on discharged debts.

45.     To effectuate this scheme, Defendants and other creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose when, in fact, only private loans satisfying the requirements of Section 523(a)(8)(B) are actually non-dischargeable.

46.     Defendants also failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of Section 523(a)(8)(B), and in particular that debtors' non-qualified loans were, in fact, discharged in bankruptcy.

47.     Thus, a law originally designed to prevent students from taking advantage of the bankruptcy system by borrowing and then discharging debt incurred for attending an accredited school subsequently enabled unscrupulous creditors to defraud vulnerable and unsophisticated student borrowers. The loans at issue here are disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between loans that are and are not dischargeable, or to seek relief through an adversary proceeding, which is an expensive and time-consuming undertaking.

48.     During the same time that lenders were telling consumers that their loans were non-dischargeable, Defendants and other lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily uncover the inaccuracy of such representations (based on a plain reading of the statute), and issuers would be liable for securities violations.

49. Defendants and other major lenders and underwriters (including Citibank, who originated two of the loans at issue in this action) thereafter included in student loan asset-backed securities' prospectuses language expressly warning investors that, pursuant to Section 523(a)(8), only private loans made for qualified expenses were excepted from bankruptcy discharge. For example, National Collegiate Student Loan Trust 2007-2, 2007-3 and 2007-4 dated state:

> Under current law, private student loans that are guaranteed by non-profit entities **or that do not exceed the borrower's cost of attendance**, less other financial aid, are generally not dischargeable by a borrower in bankruptcy under the U.S. Bankruptcy Code; however, they can become dischargeable if the borrower proves that keeping the loans non-dischargeable would impose an undue hardship on the debtor and the debtor's dependents. (emphasis added)

50. Thus, Defendants were aware of the confusion that could exist even for sophisticated parties with respect to the dischargeability of private student loans, and they made affirmative disclosures to investors in that regard, but they made no such disclosures to debtors who were being pursued in an attempt to collect discharged debts.

51. Further, according to the Consumer Financial Protection Bureau[1], discharged "private student loans" could include, for example:

- Loans where the loan amount was higher than the cost of attendance (such as tuition, books, room, and board), which occurs when a loan is paid directly to a consumer;
- Loans to pay for education at places that are not eligible for Title IV funding such as unaccredited colleges, a school in a foreign country, or unaccredited training and trade certificate programs;
- Loans made to cover fees and living expenses incurred while studying for the bar exam or other professional exams;
- Loans made to cover fees, living expenses, and moving costs associated with medical or dental residency; and
- Loans to a student attending school less than half-time.

[1] https://www.consumerfinance.gov/about-us/blog/busting-myths-about-bankruptcy-and-private-student-loans/.

**DEFENDANTS' BUSINESS STRUCTURE AND OPERATIONS**

52. An entity known as First Marblehead Corporation ("FMC") saw an opportunity to make high-cost, high interest, purported loans to students (for purposes generally but not for tuition or actual educational expenses).

53. FMC did not have the reputation, credibility, or ability to attract borrowers and, even if it did, it could not do so because it would have been required to comply with the laws of each state regulating non-bank entities.

54. To avoid the consequence of the previous paragraph, FMC devised a business plan by which it would entice national banks to lend their charters to a marketing operation to be conducted by FMC for the banks.

55. Other than lending use of their names, the banks had no meaningful involvement in the loans themselves.

56. As part of its rent-a-charter scheme, FMC enlisted a purported non-profit entity to act as the guarantor for the high-cost loans which would allow FMC to convince banks there would be little risk arising out of the loans.

57. Specifically, FMC convinced The Education Resources, Inc. ("TERI") to be the guarantor for any purported student loans that went into default.

58. However, financial records suggest TERI was a commercial mechanism for the profitability of The First Marblehead Corporation ("FMC").

59. FMC was able to convince TERI to become involved because, like the arrangement with the banks, FMC promised it would do all the work in connection with marketing and generating the loans.

60. To this end, FMC and TERI entered into a series of management agreements that included FMC managing database operations for TERI.

61. At the cost of $9.2 million, FMC acquired TERI's loan processing operations, forming the basis of a new subsidiary of FMC—First Marblehead Education Resources—which retained about 160 TERI employees.

62. With the TERI assets in hand, FMC was able to accelerate its growth. After posting revenues of $6.7 million and net income of $2 million in fiscal year 2001, the company saw revenues soar to more than $41.3 million in 2002, yielding earnings of more than $12.2 million.

63. Processing fees for TERI alone accounted for $14.2 million, structural advisory fees all but tripled to $14.8 million, while residuals increased from $1.1 million to $11.8 million. The company's administrative and other fees also increased by about a third to $475,000.00.

64. The sharp growth continued in 2003, when processing fees from TERI increased to $20.6 million, administrative and other fees enjoyed threefold growth to $1.4 million, as did residuals to $30 million, and structural advisory fees improved to $39.3 million.

65. TERI would become the depository of the original documents relating to the loans made in the names of the participating banks.

66. In 2008, the Great Recession hit and TERI filed bankruptcy in the Unites States Bankruptcy Court for the District of Massachusetts (in part because the toxicity of the high-cost loans led to massive defaults). Case No: 08-12540.

67. Therefore, in 2008, the TERI "guaranties" were voided in TERI's bankruptcy.

68. The relationship between FMC and TERI disintegrated and eventually a lawsuit between TERI and FMC was filed in the bankruptcy court post-bankruptcy, which ultimately gave control of TERI's loan database back to TERI.

69. This created a problem for FMC which it could not have foreseen: TERI ended the relationship and retained the records related to the loans it owned under the arrangement created by FMC. In other words, FMC no longer had access to the actual loan records.

70.     The loans that are the subject of this action were assigned to Defendants for collection on defaulted loans through collection letters, lawsuits, post-judgment collection efforts, and reporting the loans to consumer reporting agencies. This is Defendants' principal business.

71.     The fifteen Defendants were organized between 2001 and 2007 under the Delaware Statutory Trusts Act. Del. Code Ann. tit. 12, § 3801 et seq.

72.     The basic purpose of each Defendant is to acquire a pool of private student loans, issue notes secured by that pool of student loans, and to service and collect on those student loans.

73.     The activities and operations Defendants engage in to execute their basic purposes are delineated in a number of agreements, collectively referred to as the Trust-Related Agreements.

74.     These agreements include, but are not limited to, for each Trust: a Trust Agreement; an Indenture; an Administration Agreement, and; servicing agreements defining how Defendants' loan servicing and debt collection activities are to be carried out.

75.     Defendants act in their own name, however they do not act through employees or officers.

76.     Instead, Defendants act through entities that are empowered according to relevant Trust-Related Agreements to act in the Trusts' names.

77.     The Trusts also contracted with entities that acted as the Trusts' agents.

78.     The Trusts explicitly represent and covenant in their Trust Agreements and Indentures that they will act only in their own name.

79.     The Trusts explicitly represent and covenant in their Trust Agreements and Indentures that they will engage in the business of acquiring, owning, and servicing student loans.

80.     The Trusts explicitly represent and covenant in their Indentures that they are responsible for compliance with all Federal laws and regulations applicable to the acquired student loans.

81. The Trusts explicitly represent in their Indentures that the actions of entities acting within the prescribed authority of relevant Trust-Related Agreements are, legally, the actions of the Trusts themselves.

82. The Trusts acquired more than 800,000 private student loans from originating lenders.

83. The Trusts engage in regular servicing of these student loans through certain designated entities.

84. In the Indentures, the Trusts explicitly represent that the actions of these entities, acting within the prescribed authority of relevant servicing agreements are, legally, the actions of the Trusts themselves.

85. The Trusts also engage in delinquent or default servicing and debt collection activities through certain designated entities, and contract with subservicers to assist in these activities.

**PLAINTIFF RICHARD KLEIN'S NON-QUALIFIED EDUCATION LOAN**

86. During the 2007-2008 academic term, Plaintiff Richard Klein's daughter, Nicole Anne Klein, was going to attend the University of Nevada, Las Vegas ("UNLV").

87. In or around May, 2007, Richard Klein (hereinafter "Richard") co-signed on a private student loan for his daughter, who borrowed approximately $5,464.00. (See copy of Richard's Credit Report dated May 3, 2019, which is attached hereto as Exhibit "A").

88. According to Richard's Credit Report dated May 3, 2019, the name of the creditors reporting this debt were AES/NCT.[2]

[2] The name of the specific National Collegiate Delaware Trust "holding" the loan was not reported.

89. At the time this loan was applied for and approved, Richard's daughter was approximately 23-years old, she no longer lived with Richard, but she still resided in Nevada.

90. Richard's daughter was not Richard's dependent when Richard co-signed for the student loan currently held by NCT.

91. Therefore, this was not a qualified education loan under section 11 U.S.C. § 523(a)(8)(B).

92. Upon information and belief, Richard's daughter received approximately $5,464.00 in funds directly, but she never attended UNLV.

93. Upon information and belief, this loan was part of one of the following Delaware statutory trusts: NCSLT 2007-1; NCSLT 2007-2; NCSLT 2007-3; and NCSLT 2007-4.

94. The published "Cost of Attendance" for UNLV for the 2007-2008 academic term was $3,622.50.

95. The loan amount was higher than the cost of attendance and all or a portion of these funds were paid directly to Richard's daughter.

96. Therefore, this NCT loan was originated in excess of the published "cost of attendance" and was not a qualified education loan under section 11 U.S.C. § 523(a)(8)(B).

97. Upon information and belief, Richard was never issued a 1098-E tax form to deduct the interest payments made on this loan.

98. On or about December 13, 2019, Richard filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. § 701 et seq.

99. The obligations to AES/NCT were scheduled as liabilities in the bankruptcy and these Defendants received notice of the bankruptcy.

100. While the "automatic stay" was in effect during the pendency of the bankruptcy, it was illegal and inaccurate for these Defendants to report any post-bankruptcy derogatory

collection information inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection.

101. AES/NCT did not file any proceedings to declare its alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

102. AES/NCT also did not request relief from the "automatic stay" of 11 U.S.C. § 362 et seq.—which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities—while Richard's bankruptcy was pending to pursue Richard on any *personal* liability for any of the underlying debts.

103. On or about March 17, 2020, Richard received a bankruptcy discharge under 11 U.S.C. § 727.

104. Just like most of Richard's consumer debts, his personal liability for the private student loans was discharged in his bankruptcy proceeding.

105. After receiving his bankruptcy discharge, Richard received numerous communications from Defendant AES on behalf of NCT attempting to collect on the "private student loan debt" that was discharged in his bankruptcy.

106. AES told Richard that he owed debt as much as his daughter owed it.

107. AES regularly threatened Richard by telling him AES was going to take legal action against him.

108. AES represented to Richard that the private student loan debt was not dischargeable in bankruptcy and that he still owed the debt.

109. Richard is a retired Navy Chief Petty Officer rated with a 100% service-connected disability by the United States Department of Veterans Affairs due to Multiple Sclerosis.

110. Richard eventually paid over $5,000.00 to Defendants based upon the belief the debt was not discharged and legal action would be taken against him if he did not pay.

111.     The representations that AES/NCT made regarding the debt being was due and owing was false and misleading, as Richard did not owe this debt to Defendants after he received his bankruptcy discharge.

112.     Additionally, AES/NCT/PHEAA inaccurately reported the debt on Richard's credit report with a status of "Transferred; was Charged-off" and with remarks of "Transferred to Another Lender; Unpaid Balance Charged Off" after the debt was discharged in Richard's bankruptcy.

113.     Further, AES/NCT/PHEAA inaccurately reported that Richard made late payments on the debt while his bankruptcy was still active.

114.     Specifically, AES/NCT/PHEAA reported Richard was: 120 days past due in December, 2019; 120 days past due in January, 2020; 120 days past due in February, 2020; and 120 days past due in March, 2020.

115.     AES/NCT/PHEAA failed to correct the incorrect reporting on Richard's credit report after Richard disputed the incorrect reporting pursuant to the FCRA.

116.     As a result of AES's/NCT's/PHEAA's unlawful conduct Richard experienced anxiousness and hopelessness as he was forced to re-live the stress of debt collection activities and felt he lost the benefit of the fresh start he should have received after his bankruptcy discharge.

117.     Richard's credit worthiness was also negatively affected as a result of AES's/NCT's/PHEAA's unlawful behavior complained of herein.

**PLAINTIFF RAYMOND URIAS' NON-QUALIFIED EDUCATION LOAN**

118.     In or around August 2006, Raymond Urias (hereinafter "Raymond") co-signed on a "private student loan" for his nephew, Kyle L. Urias, who borrowed approximately $10,000.00 from Charter One Bank, N.A.

119.    Raymond's nephew was not a dependent of Raymond when Raymond co-signed for the student loan, which is currently held by NCT.

120.    Therefore, this was not a qualified education loan under section 11 U.S.C. § 523(a)(8)(B).

121.    Upon information and belief, Raymond's nephew received approximately $10,000.00 in funds from Charter One Bank, N.A. to attend UNLV for the Academic Period of "08/2006-12/2006". (See copy of Proof of Claim filed on May 21, 2010, in Raymond's Bankruptcy[3], which is attached hereto as Exhibit "B").

122.    The Proof of Claim filed on May 21, 2010, identifies "National Collegiate Trust" as the Name of Creditor.

123.    According Raymond's Credit Report dated February 8, 2010, the name of the creditors reporting this debt were AES/NCT.[4] (See copy of Raymond's Credit Report dated February 8, 2010, which is attached hereto as Exhibit "C").

124.    AES/NCT were reporting that there was a $0.00 balance, but that the account was an "Open, Government Claim". (See Id.).

125.    Upon information and belief, this loan was part of one of the following Delaware statutory trusts: NCSLT 2006-1; NCSLT 2006-2; NCSLT 2006-3; and NCSLT 2006-4.

126.    The published "Cost of Attendance" at UNLV during that term was less than $3,622.50.

127.    Thus, the loan amount was higher than the cost of attendance and all or a portion of these funds were paid directly to Raymond's nephew.

---

[3] On or about March 22, 2010, Raymond filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Nevada.  Raymond converted his Chapter 13 bankruptcy to a Chapter 7 on December 12, 2011.
[4] The specific name of what National Collegiate Delaware Trust was "holding" the loan was not reported.

128.    Therefore, this was not a qualified education loan under section 11 U.S.C. § 523(a)(8)(B).

129.    This consumer loan was scheduled in the Raymond's Bankruptcy and AES/NCT received notice of the bankruptcy.

130.    Further, while the "automatic stay" was in effect during the bankruptcy it was illegal and inaccurate for Defendants to report any post-bankruptcy derogatory collection information inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection.

131.    AES/NCT did not file any proceedings to declare its alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

132.    AES/NCT also did not request relief from the "automatic stay" codified at 11 U.S.C. §362 et seq., which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities, while the Raymond's bankruptcy was pending in order to pursue Raymond on any *personal* liability for any of the underlying debts.

133.    On or about March 13, 2012, Raymond received a bankruptcy discharge under 11 U.S.C. § 727.

134.    Just like most of Raymond's consumer debts, his personal liability for this consumer loan was discharged in his bankruptcy proceeding.

135.    After Raymond's Bankruptcy discharge, National Collegiate Student Loan Trust 2006-3 filed a lawsuit against Raymond in the Eighth Judicial District Court, Clark County, NV to collect on the private student loan debt that was discharged in his bankruptcy.

136.    National Collegiate Student Loan Trust 2006-3 received a Default Judgment against Raymond in 2014 and began to garnish him to collect on the private student loan debt that was discharged in his bankruptcy.

137. Raymond eventually paid the "full amount of the judgment"—approximately $18,000.00—to Defendant in order to stop the garnishment against him.

138. National Collegiate Student Loan Trust 2006-3's actions in pursuing and obtaining a judgment against Raymond in order to garnish him and collect on a discharged consumer loan debt were unlawful.

139. As a result of National Collegiate Student Loan Trust 2006-3's unlawful conduct, Raymond has experienced emotional distress resulting from the stress, anxiety, fear, anger, and frustration he experienced arising out of the actions complained of herein.

**PLAINTIFF SANDRA J. GUNTER'S NON-QUALIFIED EDUCATION LOAN**

140. In or around July, 2005, Sandra J. Gunter (hereinafter "Sandra") co-signed on a "private student loan" for her daughter, Stephanie Gunter, who borrowed approximately $20,000.00 from PNC Bank, N.A. to attend the College of Southern Idaho for the academic period of "08/2005-08/2006". (See copy of Proof of Claim filed on July 22, 2020, in Sandra Bankruptcy[5] attached hereto as Exhibit "D").

141. The Proof of Claim filed on July 22, 2020 lists "National Collegiate Student Loan Trust 2005-3" as the Name of Creditor. (See Id.).

142. According Sandra's Credit Report dated March 17, 2020, the name of the creditors reporting this debt were AES/NCT[6]. (See copy of Sandra's Credit Report dated March 17, 2020 attached hereto as Exhibit "E").

[5] On or about June 22, 2020, Sandra and her husband, Michael Ray Gunter, filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Nevada. They converted their Chapter 13 bankruptcy to a Chapter 7 on September 20, 2022.

[6] The specific name of what National Collegiate Delaware Trust was "holding" the loan was not reported.

143.   The published "Cost of Attendance" at the College of Southern Idaho for the Academic Period of "08/2022-08/2022" was approximately $12,146.00.

144.   The cost of attendance to attend the College of Southern Idaho for the Academic Period of "08/2005-08/2006" was significantly less than $12,146.00.

145.   Thus, the loan amount was higher than the cost of attendance and all or a portion of these funds were paid directly to Sandra's daughter.

146.   Therefore, this was not a qualified education loan under section 11 U.S.C. 523(a)(8)(B).

147.   However, in its Proof of Claim, Transworld Systems, Inc. ("Transworld"), as representative for the National Collegiate Student Loan Trust 2005-3 ("NCT 2005-3"), claims that the money loaned to Stephanie Gunter is "Money loaned non-dischargeable student loan LOAN 0001P". (See Exhibit "D").

148.   Therefore, Transworld represented in its Proof of Claim that a wholly or partially dischargeable student loan is non-dischargeable.

149.   Transworld is mischaracterizing this discharged student loan debt as a "non-dischargeable student loan" to deceive and mislead Sandra and other class member to believe these debts were not discharged.

150.   Further, while the "automatic stay" was in effect during the bankruptcy, it was illegal and inaccurate for Defendant to report any post-bankruptcy derogatory collection information, which was inconsistent with the Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection.

151.   Transworld/NCT 2005-3 did not file any proceedings to declare its alleged debts "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq.

152.    Transworld/NCT 2005-3 also did not request relief from the "automatic stay" codified at 11 U.S.C. §362 et seq., which prohibits creditors included in a consumer's bankruptcy from engaging in collection activities, while the Raymond's bankruptcy was pending to pursue Raymond on any *personal* liability for any of the underlying Debts.

153.    On December 21, 2022, Sandra and her husband received a bankruptcy discharge under 11 U.S.C. § 727.

154.    Just like most of Sandra's consumer debts, her personal liability for this consumer loan was discharged in her bankruptcy proceeding.

155.    Plaintiffs Richard Klein, Raymond Urias, and Sandra J. Gunter (collectively known as "Plaintiffs") bring this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies on behalf of themselves and all others similarly situated (the "Class"), resulting from the illegal actions of National Collegiate Student Loan Trust 2005-3; National Collegiate Student Loan Trust 2006-3; National Collegiate Student Loan Trust 2007-1; National Collegiate Student Loan Trust 2007-2; National Collegiate Student Loan Trust 2007-3; and/or National Collegiate Student Loan Trust 2007-4 Pennsylvania Higher Education Assistance Agency d/b/a American Education Services; and Transworld Systems, Inc. ("Defendants"), in unlawfully collecting funds from accounts discharged in bankruptcy, negligently or intentionally systematically reporting derogatory, misleading, and inaccurate information on consumers' credit reports, as that term is defined by 15 U.S.C. § 1681a(g), failing to properly investigate disputes concerning the inaccurate data Defendants are reporting in consumers' credit files, and failing to correct such inaccuracies, which Defendants knew or should have known were erroneous and which caused Plaintiffs' and the Class damages.

156.    Plaintiffs make these allegations on information and belief, with the exception of allegations that pertain to Plaintiffs, which Plaintiffs allege on personal knowledge.

157. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

158. Any violations by Defendants were knowing and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

159. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants.

160. Unless otherwise stated, all the conduct engaged in by Defendants occurred Nationwide.

**FACTS COMMON TO SIMILARLY SITUATED PLAINTIFFS**

161. As a matter of policy and practice, Defendants regularly and consistently failed to engage in any efforts to ensure the debts upon which it attempts to collect are not subject to a bankruptcy discharge.

162. Defendants' actions in failing to identify and eliminate discharged debts constitute their standard procedure for conducting its debt collection activities.

163. Despite being fully aware of its legal obligations, Defendants continuously breached obligations under federal and state debt collection laws.

164. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action individually and on behalf of a class initially defined as:

> National Class: All persons who obtained non-qualified education loans that were not reaffirmed or excepted from discharge under any provision of section 523(a)(8) prior to them filing bankruptcy and were subsequently discharged in their bankruptcy, but Defendants continued to collect on and report these debts as if the "student loans" were not discharged in bankruptcy.

> <u>Nevada Class</u>: All residents of Nevada whose "private student loans" were incurred prior to them filing bankruptcy and were subsequently discharged in their bankruptcy, but Defendants continued to collect on these debts as if the "student loans" were not discharged in bankruptcy.

165. Excluded from the Classes are Defendants' officers and directors; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

166. Plaintiffs reserve the right to amend the definitions of the Classes or add a Class if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

167. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

168. <u>Numerosity</u>. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of Defendants' customers whose "private student loans" were incurred prior to them filing bankruptcy and subsequently discharged in their bankruptcy.

169. <u>Commonality</u>. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a) Whether Defendant has continued to report these loans to consumer reporting agencies as outstanding debts even though the individual's "private student

loans" were incurred prior to them filing bankruptcy and were subsequently discharged in their bankruptcy; and

b) Whether Defendant has continued to collect on these debts even though the "private student loans" were incurred prior to Plaintiffs and class members filing for bankruptcy and subsequently discharged in their bankruptcy.

170. Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like that of every other Class Member, also took out a "private student loan" that was discharged in bankruptcy.

171. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs' Counsel is competent and experienced in litigating class actions.

172. Predominance. Defendants engaged in a common course of conduct toward Plaintiffs and Class Members by seeking to collect debt from them when their "private student loans" were discharged in bankruptcy. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

173. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for

Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

174. Defendants acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## GENERAL CREDIT REPORTING INDUSTRY ALLEGATIONS

### a. FICO Scores

175. FICO Inc. ("FICO") is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

176. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

177. The three largest CRA's—Equifax, Experian, and Trans Union—all rely on FICO's analytics software to evaluate and/or furnish consumer credit information.

178. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

179. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

180. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

181. There are 28 FICO Scores that are commonly used by lenders.

182. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at CRAs.

183. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

184. There are five key factors that a FICO Score considers: (1) Payment history; (2) Amount of Debt; (3) Length of Credit History; (4) New Credit; and (5) Credit Mix.

185. Each of the five factors is weighted differently by FICO.

186. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

187. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.

188. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

189. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

190. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

191. FICO Scores are entirely dependent upon information provided by Data Furnishers ("DFs") to CRAs.

192. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both "Chapters" have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**b. Metro 2 Format**

193. The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

194. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

195. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[7]

196. Therefore, the credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

197. The CDIA is the expert on accurate credit reporting. In support of this allegation, Plaintiffs avers the following:

    a. The CDIA offers an FCRA certificate program for all CRAs.

---

[7] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at:
http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

      b. The CDIA offers an FCRA awareness program for all CRAs.

c. The CDIA offers an FCRA certificate program for DFs.

d. The CDIA offers an FCRA awareness program for DFs.

e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Trans Union.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

198. The CDIA's Metro 2 is accepted by all CRAs.

199. The CDIA publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA.

200. Courts rely on such guidance to determine furnisher liability. *See, e.g., In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005) (finding that "industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation `Discharged in bankruptcy' and with a zero balance due").

201. The credit reporting industry standards for reporting Metro 2 accurately are found in the CDIA's Credit Reporting Resource Guide ("CRRG").

202. The CRRG outlines the industry standards for accurately reporting debts using Metro 2.

203. The CRRG is not readily available to the public. It can be purchased online for approximately $229.45.

204. Even if a buyer is ready and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

205. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

206. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

207. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms.

208. E-OSCAR is the web based Metro 2 compliant system developed by the CRAs that enables DFs and CRAs to create and respond to consumer credit disputes.

209. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-Oscar to the DF.

210. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file, e.g. "Account Type - 07" (07 in Metro 2 refers to a Charge Account).

211. When a consumer files bankruptcy, certain credit reporting industry standards exist.

212. Certain Metro 2 data is regularly inspected and calculated by FICO when determining a consumer's credit worthiness.The Consumer Information Indicator ("CII") is a critical *status* field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

213. Under Metro 2, the CII must be reported only on the consumer to whom the information applies.

214.   It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

215.   In the consumer bankruptcy context, CII Metro Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

216.   Such a reporting alerts any potential lender that the account is no longer in a collectable status, but is rather being handled by a Chapter 7 trustee.

217.   The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

218.   The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

219.   The lack of a CII reported status makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

220.   The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay or discharge exists to prevent *in personam* collection activity.

221.   Therefore, failure to report the correct CII status indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

222.   Under the FCRA, a bankruptcy can be reported for ten years.

223.   The ten-year rule for reporting runs from the date the bankruptcy was filed.

224.   A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

225.   The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

226. Failure to reference the bankruptcy filing and/or discharge (CII field) results in a lower FICO Score which, in turn, results in those making credit decisions to draw a more negative inferences regarding a consumer's credit worthiness.

227. On information and belief, Defendants adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of its respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

**GENERAL CLASS ACTION ALLEGATIONS**

228. Both the proposed National Class and the proposed Nevada Subclass will be collectively referred to as the Class except where it is necessary to differentiate them.

229. Plaintiffs are among many thousands of persons in the United States who have filed bankruptcies pursuant to Chapters 7 and 13 of the U.S. Bankruptcy Code and who have been granted orders of discharge by a U.S. Bankruptcy Court. Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcies, except for those that have been: (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) successfully challenged as non-dischargeable by one of the creditors in a related adversary proceeding. Plaintiffs and the Class Members are persons for whom the debts at issue have been discharged through bankruptcy.

230. Defendants are creditors who regularly engages in the business of loaning money to consumers like Plaintiffs and other members of the Class.

231. In the ordinary course of business, Defendants' debtors who are enduring financial hardship fall behind on their payments of Defendants' accounts. Prior to the filing of any personal bankruptcies, Defendants, their collection agencies and delinquent debt companies that purchase Defendants' debt, act to collect these past due debts by threatening in dunning letters to place a

"charge off" or other similar "past due" notations on the debtors' credit reports. Said letters threaten to ruin the debtors' credit unless they pay the past due debt. Defendants, their debt collectors and delinquent debt companies that purchase Defendants' debt also act to collect these past due debts by promising in dunning letters to remove the "charge off" or other "past due" notations on the debtors' credit reports to show that the past due debts have been paid if the debts are paid.

232.    In the ordinary course of business, Defendants issue reports to credit reporting agencies as to the current status of debts incurred by individuals whom Defendants have extended credit. It is also an entity which regularly and, in the ordinary course of business, furnishes information to one of more credit reporting agencies about its transactions and experiences with consumers.

233.    Defendants have knowledge of when its past due debts are discharged because it receives a discharge notice from the U.S. Bankruptcy Court.

234.    Despite the fact that Defendants received notices of the discharge of each Class Members' debt to Defendants, Defendants employed a deliberate policy of not notifying credit reporting agencies that debts formerly owing to Defendants were no longer "Open," "charged off," or currently still due and owing because they had been discharged in bankruptcy.

235.    As a result of Defendants' refusal to make such updates to credit reporting agencies, debts that have been discharged in bankruptcy are instead listed on Class Members' credit reports as "open," "past due," and/or "charged off." These notations clearly indicate to potential creditors, employers, or other third parties that the Class Members still owe a debt and that debt may be subject to collection. These notations therefore adversely affect a Class Members' ability to obtain credit or employment and have the inherent coercive effect of inducing Class Members to make payments on the discharged debt.

236. Moreover, Defendants' failure and further refusal to update credit report tradelines for many thousands of consumers to reflect that their debts were, in fact, discharged in bankruptcy, as opposed to reporting a current (pay) status of "open," "charged off," or "past due," runs afoul to Section 727 of the Bankruptcy Code and the primary purpose of the protection offered by the Bankruptcy Code: The discharge of a debt. *See Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).

237. Many debtors whose debts have been discharged in bankruptcy have advised Defendants, via an FCRA dispute, of Defendants' failure to update the information on their credit reports to show that their debts have been discharged through bankruptcy. Said debtors have requested that Defendants remove the "open," "charged off," and "past due" statuses from their credit reports. Defendants refused to do so.

238. Upon information and belief, Defendants have a deliberate policy of refusing the debtors' requests to remove inaccurate, derogatory, and misleading statuses from the Defendants debts that were transferred/sold prior to the filing of the bankruptcy from the debtors' credit reports.

239. As a result, the credit reports of these individuals and of all Class Members incorrectly show their indebtedness to Defendants to be legally collectible.

240. Upon information and belief, even in response to notices made pursuant to the FCRA § 1681i(a)(2), from Class Members that information contained in their credit reports was inaccurate, Defendants refused to correct erroneous credit information despite its affirmative duty to do so under FCRA § 1681s-2(b).

241. Upon information and belief, Defendants also received many requests from the CRAs that Defendants verify that the debts owed by Plaintiffs and Class Members were discharged in bankruptcy, to which Defendants responded that the debts were still due and owing, despite

Defendants' knowledge that such debts have in fact been discharged in bankruptcy.

242.    Defendants knew that the existence of such inaccurate information in the Class Members' credit reports would damage the Class Members' credit ratings and their ability to obtain new credit, a lease, a mortgage or employment, all of which may be essential to reestablishing their life after going through bankruptcy.

243.    Defendants chose not to advise the CRAs of the fact that the Class Members' debts have been discharged because Defendants continue to receive payment either directly or indirectly on discharged debts.

244.    This results from the fact that Class Members, in order to obtain favorable credit or credit at all, often feel it necessary to pay off the debt despite its discharge in order to remove the inaccurate information from their credit reports.

245.    This belief is intentionally reinforced by Defendants when Class Members contact Defendants asking Defendants to correct the erroneous credit information. Not only do Defendants refuse to make such corrections, but they advise Class Members that so long as the discharged debt remains unpaid the misleading information will remain on their credit report for at least seven years.

246.    Thus, when a Class Member needs to rent a car, obtain employment or rent an apartment, or other similar transactions, and they are advised by Defendants they will not remove the erroneous information unless they pay the debt, Class Members often pay that debt despite the fact that it has been discharged in bankruptcy. Accordingly, Defendants know they are obtaining repayment on debts that have been discharged in bankruptcy.

247.    Class Members believe they must pay the debt in order to remove it from the credit reports because they are often advised prior to bankruptcy by Defendants and collection agencies that, if their debt is reported on their credit report, it will dramatically affect their credit rating and

will severely impact their ability to receive credit in the future.

248.    Defendants adopted a systematic pattern and practice of failing and refusing to update credit information with regard to debts discharged in bankruptcy because it sells those debts and profits by the sale. Defendants know that if the credit information is not updated, then many Class Members will feel compelled to pay off the debt even though it is discharged in bankruptcy. Thus, buyers of Defendants' debt know, and are willing to pay more for the fact that, they will be able to collect portions of Defendants debt despite the discharge of that debt in bankruptcy.

249.    Upon information and belief, Defendants receive a percentage fee of the proceeds of each debt repaid to Defendants and forwarded to the buyer of Defendants' debt. Defendants therefore has a clear economic incentive to violate the FCRA.

250.    Buyers of Defendants' consumer debts that have been sold by Defendants prior to a bankruptcy being filed know that, post-sale, Defendants will refuse to correct the credit report to reflect the consumer's bankruptcy discharge, which means that the debtor will feel significant added pressure to obtain a "clean" report by paying on a discharged debt.

251.    Class Members' discharged debts that have been sold or transferred fail to identify the purchaser. Therefore, as far as the debtor is concerned, the only creditor to approach to correct the credit reports is Defendants, which, as a matter of policy, refuses to correct them. While, in addition, retaining a percentage of payments sent to Defendants by the debtor, as opposed to Defendants' undisclosed buyer. This highlights further the perniciousness of Defendants' systematic approach in refusing to correct such reports.

252.    Reporting a debt to a credit bureau is a "powerful tool designed, in part, to wrench compliance with payment terms." *Rivera v. Bank One*, 145 F.R.D. 614, 620 (1993).

253.    Defendants' actions also constitute a violation of 11 U.S.C. § 524(a)(2), which provides that a discharge in bankruptcy operates as an injunction against the commencement or

continuation of an action, the employment or process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor.

254. Accordingly, Defendants violated the FCRA by failing to comport its credit reporting with the terms of the Bankruptcy Discharge under §§ 727 and 524(a)(2) of the Bankruptcy Code, which ultimately intentionally assisted in the collection of discharged debt by not correcting the Class Members' credit reports to reflect that the debt has, in fact, been discharged.

255. Defendants' reporting was inaccurate and materially misleading due to the effect of Plaintiffs' successful Bankruptcy Discharge, because:

> "The failure to update a credit report to show that a debt has been discharged is also a violation of the discharge injunction if shown to be an attempt to collect the debt. Because debtors often feel compelled to pay debts listed in credit reports when entering into large transactions, such as a home purchase, it should not be difficult to show that the creditor, by leaving discharged debts on a credit report, despite failed attempts to have the creditor update the report, is attempting to collect the debt."[8]

256. Defendants' conduct is in bad faith, is vexatious and oppressive and is done with full knowledge that it is in violation of the law.

257. As a result of a major class action settlement, the CRAs have agreed to revise their procedures to report all pre-bankruptcy debts as discharged, unless furnishers provide information showing that a debt was excludable from discharge. *White v. Experian Info Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number).

258. Therefore, even the CRAs acknowledged that the accurate and proper way to report the status of all pre-bankruptcy debts, like Plaintiffs' and Class Members' debts, following successful Bankruptcy discharges of the debt, is "Discharged in Bankruptcy" (or the equivalent).

[8] Collier on Bankruptcy, paragraph 524.02[2][B] (16th Ed. 3 2013), at page 524-23.

259.    Defendants' persistent refusal to provide updated credit information to the credit reporting agencies that Class Members' debts are no longer "open," "charged off," or "past due" because they have been discharged in bankruptcy is knowing and willful and constitutes violations of the FCRA.

260.    Defendants also directly collected on debts that the Plaintiffs and Class Members discharged in bankruptcy.

261.    Plaintiffs' claims are typical of Class Members' claims in that Plaintiffs' claims and Class Members' claims all arise from Defendants' wrongful misreporting of consumer credit information on their credit reports.

262.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most class members would likely find that the cost of litigating their individual claim is prohibitively high and would therefore have no effective remedy. Defendants would retain the benefits of its wrongdoing despite serious violations of the law.

263.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendants. In contrast, the adjudication of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each class member.

264.    Defendants acted or failed to act on grounds that apply generally to the class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

265.    Class certification, therefore, is appropriate pursuant to Rule 23 because the common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment**
**(On Behalf of Plaintiffs Richard Klein, Raymond Urias, Sandra J. Gunter and All Class Members similarly situated)**

266.    Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

267.    Plaintiffs request that declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Debts were discharged by operation of law on August 3, 2016, because they were not student loans protected by any subsection of section 523(a)(8).

**SECOND CAUSE OF ACTION**
**Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq.**
**(On Behalf of Plaintiffs Richard Klein and All Class Members similarly situated)**

268.    Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

269.    Defendants failed to reference the bankruptcy filing and discharge in the CII field in Richard's Trans Union credit report with respect to a private student loan account successfully discharged through bankruptcy.

270.    Additionally, Defendants inaccurately reported the account with a status of "Transferred; was Charged-off" and with remarks of "Transferred to Another Lender; Unpaid Balance Charged Off."

271.    Further, Defendants inaccurately reported that Richard made late payments on the debt while his bankruptcy was still active. Specifically, Defendants reported that Richard was

120 days past due in December 2019, 120 days past due in January 2020, 120 days past due in February 2020, and 120 days past due in March 2020.

272. The status reported by Defendants, as opposed to the correct status of "Discharged in Bankruptcy", inaccurately and misleadingly suggests that Richard still has a personal legal liability to pay the alleged Debt, which is the opposite effect of receiving a bankruptcy discharge.

273. A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about what otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

274. On or around July 6, 2022, Richard disputed the inaccurate reporting pursuant to 15 U.S.C. § 1681i, by notifying Trans Union, in writing, of the inaccurate, misleading, and derogatory information.

275. Specifically, Plaintiffs sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate information be updated, modified, or corrected.

276. Upon information and belief, Trans Union timely notified Defendants of Richard's dispute.

277. On or around July 27, 2022, Richard received notice that Trans Union and Defendants investigated and reinvestigated Richard's dispute, as required under 15 U.S.C. § 1681i(a)(6).

278. Defendants failed to review all relevant information provided by Richard in his dispute, as required by and in violation of 15 U.S.C. § 1681s-2(b).

279. Defendants failed to correct the inaccurate, misleading, and derogatory reporting regarding the discharged debt. In turn, Trans Union re-reported the inaccurate information.

280. Defendants were required to conduct a reasonable investigation into the specific accounts on Richard's and the Class' consumer reports pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

281.    Upon information and belief, Defendants' investigation of Richard's and the Class' disputes was unreasonable.

282.    More specifically, Defendants should have confirmed from its records, as well as Richard's and the Class' dispute letters and the bankruptcy records that were publicly available to Defendants, that the information Defendants was reporting was patently inaccurate and materially misleading.

283.    A reasonable investigation would have also led to Defendants consulting with the CRRG's Metro 2 instructions to determine the accurate and proper reporting of the current status of the accounts, which would have revealed that Defendants should have reported the status of these accounts as "Discharged in Bankruptcy."

284.    However, following Defendants' FCRA investigations, there was no notation, status update, or any other indication in the trade lines that the accounts were discharged in Richard's and the Class' bankruptcies.

285.    Accordingly, Defendants failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by failing to remove and/or correct the disputed and incorrect information.

286.    Defendants failed to review all relevant information provided by Richard and the Class Members, as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

287.    Due to Defendants' failure to reasonably investigate, they further failed to correct and update Richard's and the Class' information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

288.    Richard's and the Class' continued efforts to correct Defendants' erroneous and negative reporting of the accounts by communicating their disputes with Defendants were fruitless.

289. Defendants' continued inaccurate and negative reporting of the accounts in light of its knowledge of the actual error was willful.

290. By inaccurately reporting account information relating to the accounts after notice and confirmation of its errors, Defendants failed to take the appropriate measures as required by 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

291. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

292. Richard and the Class Members were (and continue to be) damaged as a direct and proximate result of Defendants' unlawful conduct including without limitation, fear of credit denials, out-of-pocket expenses in challenging the inaccurate reporting, damage to their creditworthiness, emotional distress, loss of privacy, and other economic and non-economic harm, for which they are entitled to compensation.

293. As a result of each and every willful violation of the FCRA, Richard and the Class are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiffs Richard Klein and Raymond Urias and All Class Members similarly situated)**

294. Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

295. Plaintiffs and the Class Members were (and continue to be) damaged as a direct and proximate result of Defendants' unlawful conduct including without limitation, collecting funds from accounts that were discharged in bankruptcy.

296. Plaintiffs and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and fees and costs of litigation.

**FORTH CAUSE OF ACTION**
**Bankruptcy Discharge Injunction violations under 11 U.S.C. § 524**
**(On Behalf of Plaintiffs Richard Klein, Raymond Urias, Sandra J. Gunter and All Class Members similarly situated)**

297. Plaintiffs repeat, re-allege, and incorporate by reference all of the above paragraphs, as though fully set forth herein.

298. For the reasons stated in more detail above, it was inaccurate and materially misleading for Defendants to continue to collect from Plaintiffs and the Class on accounts that were discharged in bankruptcy.

299. By knowingly and willfully collecting from Plaintiffs and the Class on accounts that had been discharged in bankruptcy, Defendants was noncompliant with 11 U.S.C. §§ 524(a)(2) and 727 of the Bankruptcy Code.

300. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of § 524 of the Bankruptcy Code.

301. Plaintiffs and Class Members have been damaged by Defendants' conduct and therefore seek an award of sanctions, a declaration that the Defendants violated 11 U.S.C. § 524(i), injunctive relief, and all appropriate damages and other recovery, including but not limited to actual damages, punitive damages, and attorneys' fees and costs pursuant to the Court's inherent

powers and its statutory 11 U.S.C. § 105(a) powers for Defendants' gross violations of the discharge injunction and orders of the Bankruptcy Courts.

**FIFTH CAUSE OF ACTION**
**Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.**
**(On Behalf of Plaintiffs Sandra J. Gunter, Richard Klein and All Class Members similarly situated)**

302. Plaintiffs repeat, re-allege, and incorporate by reference all of the above paragraphs, as though fully set forth herein.

303. Defendants Transworld Systems, Inc. ("Transworld") and AES, are "debt collectors" within the meaning of 15 U.S.C. § 1692a(6).

304. The "loans" are "debts" within the meaning of 15 U.S.C. § 1692a(5).

305. Sandra J. Gunter and Richard Klein are a "consumers" within the meaning of 15 U.S.C. § 1692a(3).

306. It is unlawful to use "false, deceptive or misleading" representations or to misrepresent the legal status or character of a debt under 15 U.S.C. § 1692e(2)(A).

307. It is unlawful to use any "unfair or unconscionable means" in seeking to collect on a debt under 15 U.S.C. § 1692f.

308. Defendant Transworld misrepresented the legal status and character of the PNC Bank, N.A. loan as a non-dischargeable student loan in order to induce payment after the entry of discharge.

309. Defendant Transworld and AES used "deceptive and misleading" representations and "unfair means" in collecting on the "private student loans"

310. In Sandra's bankruptcy case, Transworld filed a Proof of Claim in Sandra's bankruptcy case and made representations in the Proof of Claim that the debt was a non-dischargeable student loan when the debt was discharged in her bankruptcy.

311. Even if the loan was not discharged in her bankruptcy, the loan was still possibly dischargeable under *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987).

312. Within the last year, AES represented to Richard that the private student loan debt was not dischargeable in bankruptcy and that he still owed the debt.

313. AES has also threatened to take legal action against Richard if he did not pay the "private student loan debt" and told him that he was just as responsible for paying the debt as his daughter.

314. Plaintiff has suffered direct and concrete injury to property as a result of these misrepresentations.

315. Plaintiff requests damages in an amount to be determined at trial for Defendant Transworld's violations of the Fair Debt Collection Practices Act and also request an award of attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**Violation of the Nevada Deceptive Trade Practices Act NRS 598 et seq. (NDTPA), Constituting "Consumer Fraud" Under NRS 41.600 et seq.**
**(On Behalf of Plaintiffs and the Nevada Class)**

316. Plaintiffs repeat, re-allege, and incorporate by reference all of the above paragraphs, as though fully set forth herein.

317. Through the above detailed conduct, Defendants violated NRS 598.0915(15) by knowingly making false representations regarding Plaintiffs' legal rights and obligations regarding the alleged debts, and by taking legal action Defendants was not entitled to take to collect the alleged debts.

318. Through this conduct, Defendants violated NRS 598.0923(1)(c) by violating the NDTPA, a Nevada statute.

319. Pursuant to NRS 41.600(2)(e), Defendants' illegal attempts to collect the alleged debts from Plaintiffs, in violation of NRS 598.0923(1)(c) and NRS 598.015(15), constitute "consumer fraud."

320. The foregoing acts and omissions constitute numerous and multiple violations of the NDTPA.

321. As a result of each and every violation of the NDTPA, Plaintiffs are entitled to any damages sustained, pursuant to NRS 41.600(3)(a); and reasonable attorney's fees and costs pursuant to NRS 41.600(3)(b) from Defendants.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, individually and on behalf of the other members of the Class proposed in this complaint, respectfully request that the Court enter judgement in favor of Plaintiffs and the Class as follows:

- Certifying this action as a class action, with a class as defined above;
- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;
- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;
- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each

incident of negligent noncompliance of the FCRA;

- An award of costs of litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;

- An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

- An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);

- For equitable relief enjoining Defendants from engaging in the wrongful acts and omissions complained of herein;

- For equitable relief prohibiting Defendants filing Proof of Claims mischaracterizing debts as "non-dischargeable student loans" and requiring Defendants to file amended Proofs of Claims for those Proofs of Claims that have already been filed with this language;

- Awarding compensatory damages to redress the harm caused to Plaintiffs and Class Members in the form of, *inter alia*, unjust enrichment;

- Actual damages, punitive damages, and attorneys' fees and costs pursuant to the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers for Defendants' gross violations of the discharge injunction and orders of the Bankruptcy Courts;

- Interest on all amounts awarded; and

- Awarding Plaintiffs and the Class such other and further relief as this

Court deems just and proper.

## TRIAL BY JURY

322.    Pursuant to the seventh amendment to the Constitution of the United States of America and the Constitution of the State of Nevada, Plaintiffs are entitled to, and demand, a trial by jury.

DATED this 23rd day of December 2022.

Respectfully submitted,

**FREEDOM LAW FIRM**

/s/ George Haines
George Haines, Esq.
Gerardo Avalos, Esq.
8985 South Eastern Ave., Suite 350
Las Vegas, NV 89123

Scott C. Harris (to be admitted)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003
Facsimile: (919) 600-5035
sharris@milberg.com

Gary M. Klinger (to be admitted)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

*Attorneys for Plaintiffs Richard Klein, Raymond Urias, Sandra J. Gunter and all others similarly situated*

# EXHIBIT "A"

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

## Client Overview

**Name:** **Richard Klein**

**SSN:** XXX-XX-[redacted]

**Address:** 1601 S. Sandhill Rd. Unit 203
Las Vegas, NV 89104

## Credit Score Analysis[1]

Powered By creditxpert

| Client | Current Score | 12 Month Post-bankruptcy Credit Score | Net Credit Score Effect |
|---|---|---|---|
| Richard Klein | [redacted] | [redacted] | [redacted] |

This **Preferred Bankruptcy Credit Report** includes information reported from: Experian TransUnion LexisNexis

## Summary of Accounts with Balances

| Account Type | Number of Accounts | Total Monthly Payments | Total of Balances Remaining | Past Due Accounts | Percentage of Past Due Accounts | Total Amounts Past Due |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## Alerts

1 Record(s)

| Alert Message | Source |
|---|---|
| SSN MATCH: EXACT MATCH BETWEEN SSN ON INPUT AND SSN ON FILE | TU |

## Address Variations

6 Record(s)

| Reported Address | Date Reported | Source |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] |

[redacted] Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

*Prepared for Haines & Krieger, LLC*

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

**Report Type:** Individual Preferred BCR **Report Number:** 5465809 **Client Code:** A2647 **Reported Date:** 05/03/2019

## Address Variations

6 Record(s)

| Reported Address | Date Reported | Source |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| 1601 S SANDHILL RD UNIT 203, LAS VEGAS, NV 891046716 | 03/2019 | EX |

## Employment Variations

4 Record(s)

| Reported Employment | Date Reported | Source |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

## 8-Year Supplemental National Bankruptcy Search

0 Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Source |
|---|---|---|---|---|---|---|---|

## Liens and Judgments Search

0 Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant | Source |
|---|---|---|---|---|---|---|---|---|

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

**Report Type:** Individual Preferred BCR **Report Number:** 5465809 **Client Code:** A2647 **Reported Date:** 05/03/2019

## Public Records Search

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant | Source |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## Mortgage Liabilities with Balances

0 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|

No Reported Mortgages

## Non-Mortgage Liabilities with Balances

9 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

**Report Type:** Individual Preferred BCR **Report Number:** 5465809 **Client Code:** A2647 **Reported Date:** 05/03/2019

## Non-Mortgage Liabilities with Balances

9 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|
| **Name:** Aes/nct<br>**Type:** Joint Contractual Liability / Applicant<br>**Account:** XXXXXXXXXXXX0001<br>**Status:** Open, Current Account<br>**Term:** 240 Months<br>Installment, Educational | **Current:**<br>$3,435<br>**High Credit:**<br>$5,464 | **Date Opened:**<br>05/2007<br>**Last Reported:**<br>03/31/2019<br>**Last Activity:**<br>03/22/2019 | **Monthly:**<br>$46<br>**Past Due:**<br>$0<br>**Pay History:**<br>CCCCCCCCCCCC | Aes/nct<br>Attn: Bankruptcy<br>PO Box 2461<br>Harrisburg, PA 17105<br>**Verified:**<br>04/2019 | Pob 61047<br>Harrisburg, PA 17106<br>800-233-0557 | TU, EX |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

© 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

## Non-Mortgage Liabilities with Balances

9 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|
| | | | | | | TU, EX |

## Liabilities without Balances

7 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

 © 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

*Prepared for Haines & Krieger, LLC*

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

## Liabilities without Balances

7 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Source |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | TU, EX |

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2019 CINgroup. All Rights Reserved

Page 6 of 10

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

## How to read a tradeline

| 1 Account Details | 2 Balance Details | 3 Account Dates | 4 Payment Details | 5 Bankruptcy Specific Reported Address | 6 Bureau Reported Address | 7 Owner & Source |
|---|---|---|---|---|---|---|
| **Name:** Sample Creditor<br>**Type:** Individual / Applicant<br>**Account:** XXXXXXX23456<br>**Status:** Open, Fixed Rate Installment | **Current:**<br>$22,908<br>**High Credit:**<br>$24,475 | **Date Opened:**<br>07/12/2013<br>**Last Reported:**<br>07/27/2015<br>**Last Activity:**<br>06/15/2015 | **Monthly:**<br>$50<br>**Past Due:**<br>$100<br>**Pay History:**<br>21111CC1C1C2 | Sample Creditor<br>123 Sample Street<br>Sample, Ohio 12345<br>800-722-0983<br>**Verified:**<br>09/2014 | Sample Creditor<br>1 Sample Pkwy<br>Sample, Ohio 54321 | 1 TU, EX, EQ<br>2 EX, EQ |

Note: The information on this tradeline is ficticious and used for example purposes only.

**1. Account Details:**
The **Name** field is the creditor's name as reported by the bureaus. Ownership **Type** displays if the account is individual or joint, as well as the debtors relationship to the liability. **Account** contains the actual account number reported for the tradeline, hashed out for privacy. **Status** displays the most current status reported by the bureaus, examples include Open, Current / Open, Collection / Closed, Purchased By Another Lender. Followed by the Credit Loan Type which describes the nature of the loan. For a collection account, when the creditor provides original creditor information to the bureaus, it will be listed in this section under **Original Creditor**.

**2. Balance Details:**
The last reported balance provided to the bureaus will be displayed as **Current**. **High Credit** is the highest balance ever reported throughout the tradeline's lifetime.

**3. Account Dates:**
**Date Opened** is the date the account was opened. **Last Reported** is the date the tradeline was last reported to the bureaus. **Last Activity** is the last time *any* activity occurred on the account. That activity covers a wide range and includes transactions, payments, and disputes.

**4. Payment Details:**
The expected regular payment due each month is listed as **Monthly**. **Past Due** is the amount the tradeline is past due as of the last reported date. **Pay History** displays the monthly payment history for that account. The number of months may vary from tradeline to tradeline. Each month is represented by a letter or number. The far left digit represents the most current reported month. **C** = Paid as agreed, **1** = 30 days past due, **2** = 60 days past due, **3** = 90 days past due, **4** = 120 days past due, **5** = 150 days past due, **6** = 180 days past due, **8** = Repossession, **9** = Collection, - = No history.

**5. Bankruptcy-Specific Address:**
The **Bankruptcy-Specific Address** is listed for creditor noticing. CIN Legal Data Services continually updates this database by creditor frequency, type, and recency. **Verified** displays the month and year the address was updated.

**6. Bureau Reported Address:**
The generic creditor contact address provided by the bureau is displayed in the **Bureau Reported Address** field.

**7. Owner* & Source:**
**Owner** is populated with the responsible party reported by the bureau for each tradeline. **Source** is the bureau that has provided CIN Legal Data Services with information for the tradeline, abbreviated as follows: TU = TransUnion, EQ = Equifax, EX = Experian). If supplemental information was provided by LexisNexis, it will be also be listed in the Source field abbreviated as LN.
** Owner only applies to Joint reports*

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2019 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

**BANKRUPTCY CREDIT REPORT NOTICES:**

[1] CIN Legal Data Services' Credit Score Analysis, powered by CreditXpert, simulates changes to the credit file to calculate the potential score impact of a Chapter 7 bankruptcy filing. It simulates filing the Chapter 7 bankruptcy immediately, followed 3 months later by discharge of all debt other than student loans and mortgages. It also simulates opening a revolving credit card with a $500 credit limit 2 months after discharge, and then maintaining a balance of $300 on that card for 10 months. The final score is calculated 15 months from now (one year after the bankruptcy discharge). myHorizon assumes that monthly payments will be made on time for mortgages and student loans, and that zero-balance credit accounts will be closed by creditors at the time of discharge. Accounts last reported 4 or more months ago are not included in the bankruptcy filing unless they are derogatory accounts.

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation. CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an "as is" basis, and CreditXpert inc. and its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

Copyright © 2000-2019 CreditXpert Inc. All rights reserved. CreditXpert® is a registered trademark of CreditXpert Inc. The CreditXpert logo is a trademark of CreditXpert Inc.

Monthly payment amounts include minimum monthly payments on accounts with outstanding balances that may have recently been frozen or closed by the original credit grantor.

CIN Legal Data Services Bankruptcy-Specific Address Information was obtained via telephone from the current creditor by CIN Legal Data Services Staff. Information verified by CIN Legal Data Services Staff was provided by the creditor as of the "Verified" date listed within each trade name and address listing. Please note, BAPCPA language regarding the noticing of creditors may dictate the use of a different address.

The 8-Year Supplemental National Bankruptcy Search and the Liens/Judgments Search products are not provided by "Consumer Reporting Agencies" as that term is defined in the FCRA. Judgments, liens and other public records being reported by the national credit bureaus accessed in compiling this credit report will appear in the "Public Records" section.

Data from this credit report can be imported into participating bankruptcy forms preparation software products for thirty (30) days from the Reported Date as shown in the Report header of each page. After thirty (30) days, the import function will no longer be available for this credit report.

**ATTORNEY: PLEASE GIVE THIS NOTICE TO CONSUMERS**

Para información en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington DC 20552.

**A Summary of Your Rights Under the Fair Credit Reporting Act**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

- You must be told if information in your file has been used against you. Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- You have the right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

- In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

**Report Type:** Individual Preferred BCR **Report Number:** 5465809 **Client Code:** A2647 **Reported Date:** 05/03/2019

•You have the right to ask for a credit score. Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

•You have the right to dispute incomplete or inaccurate information. If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

•Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information. Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

•Consumer reporting agencies may not report outdated negative information. In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

•Access to your file is limited. A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.
•You must give your consent for reports to be provided to employers. A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

•You may limit "prescreened" offers of credit and insurance you get based on information in your credit report. Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

•You may seek damages from violators. If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

•Identity theft victims and active duty military personnel have additional rights. For more information, visit www.consumerfinance.gov/learnmore.

•States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General.

**•For Information about your Federal rights contact:**
1. a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates: Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552; b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.
2. To the extent not included in item 1 above: a. National banks, federal savings associations and federal branches and federal agencies of foreign banks: Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050; b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act: Federal Reserve Consumer Help Center, PO Box 1200,Minneapolis, MN 55480; c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations: FDIC Consumer Response Center, 1100 Walnut St., Box #11,Kansas City, MO 64106; d. Federal Credit Unions: National Credit Union Administration, Office of Consumer Protection (OCP), Division of Consumer Compliance and Outreach (DCCO), 1775 Duke Street, Alexandria, VA 22314.
3. Air carriers: Asst. General Counsel for Aviation Enforcement & Proceedings, Aviation Consumer Protection Division, Department of Transportation, 1200 New Jersey Avenue, S.E., Washington, DC 20590.
4. Creditors Subject to Surface Transportation Board: Office of Proceedings, Surface Transportation Board, Department of Transportation 395 E Street, S.W., Washington, DC 20423.
5. Creditors Subject to Packers and Stockyards Act, 1921: Nearest Packers and Stockyards Administration area Supervisor.
6. Small Business Investment Companies: Associate Deputy Administrator for Capital Access, United States Small Business Administration, 409 Third Street, SW, 8th Floor, Washington, DC 20416.
7. Brokers and Dealers: Securities and Exchange Commission, 100 F Street, N.E., Washington, DC 20549.
8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks and Production Credit Associations: Farm Credit Administration, 1501 Farm Credit Drive, McLean, VA 22102-5090.
9. Retailers, Finance Companies, and All Other Creditors Not Listed Above: FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.

**State Law Notices:** You may be entitled to additional fair credit reporting rights under State Law. Go to www.cingroup.com/legal/fcra for a listing of States' Notices of Consumers' Rights.

**To Dispute Information Appearing in This Report:** Send the following information by email to consumer@cingroup.com or by postal mail to **CIN Legal Data Services, ATTN: Consumer Disputes, 4540 Honeywell Court, Dayton, OH 45424**: **1.** Your complete name, address, and telephone number. **2.** The "Report Number" and "Reported Date" located at the top right corner of the first page of the credit report. **3.** The name and account number for any creditor whose data you are disputing. Explain why you feel the creditor's information is incorrect. **4.** A request that the information you are disputing be removed or corrected. **5.** Copies (not originals) of any documents that support your position. Within 5 days of receiving your dispute, CIN Legal Data Services ("CIN") will investigate the

© 2019 CINgroup. All Rights Reserved

**Bankruptcy Credit Report**™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Individual Preferred BCR | **Report Number:** 5465809 | **Client Code:** A2647 | **Reported Date:** 05/03/2019 |
|---|---|---|---|

dispute and will notify all of the three nationwide credit reporting agencies (Experian, TransUnion, and Equifax) that are reporting the disputed information. The credit reporting agencies have 30 days in which to investigate your dispute and send their investigation results to CIN. CIN will mail you a copy of each credit reporting agencies' investigation results within 1 business day of receiving the same from the agencies.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2019 CINgroup. All Rights Reserved

Page 10 of 10

# EXHIBIT "B"

United States Bankruptcy Court District Of Nevada

| Name of Debtor Raymond Urias | Case number 10-14632 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

National Collegiate Trust

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:

First Marblehead Corp
One Cabot Road
Medford MA 02155

Telephone number: (866) 263-6474

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

This space is for Court Use Only

Account or other number by which creditor identifies debtor:

xxx-xx-[redacted]

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other________________
- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (Fill out below)

Your SS#: ________ - ______ - ________

Unpaid compensation for services performed

from ____________ to ____________
(date) (date)

**2. Date debt was incurred:** 08/28/06

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ 11,911.42

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charge.

**5. Secured Claim.**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate ☐ Motor Vehicle
☐ Other________________

Value of Collateral: $________________

Amount of arrearage and other charges at time case filed included in secured claim, if any $

**6. Unsecured Priority Claim.**

☐ Check this box if you have an unsecured priority claim

Amount entitled to priority $ __________

Specify the priority of the claim:

- ☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a-____).

*Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**7. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This Space Is for Court Use Only

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| MAY 21 2010 | NCT; By it's authorized agent, /s/ Georgia Jacques/ First Marblehead Corp. |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

From: unknown Page: 4/9 Date: 8/15/2006 1:19:27 PM

(4) of (9)

## Cosigned Loan Request/Credit Agreement – Signature Page

**NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION**

**LOAN PROGRAM INFORMATION**

Astrive Education Loan — Academic Period: 08/2006-12/2006

Lender: Charter One Bank, N.A. — School: UNIVERSITY OF NEVADA LAS VEGAS

Loan Amount Requested: $10000.00 — Repayment Option: Immediate Repayment

Deferral Period Margin: 5.75 — Repayment Period Margin: 5.75 — Loan Origination Fee Percentage: 8.00

**STUDENT BORROWER INFORMATION** (Must be at least 18 years of age)

Borrower Name: Kyle L Urias — Home Address: 3583 Middlebury Ave Las Vegas, NV 89121
Social Security #: [redacted]-5220 — Date of Birth: [redacted] — Home Telephone: [redacted]

Student Citizenship (check one box): ☒ U.S. Citizen ☐ Eligible Non-Citizen (Attach front & back copy of CIS or student visa card)
Note: Personal reference name and address cannot match that of the Cosigner.
Personal Reference Name: Ramona Vincent — Reference Home Tel #: [redacted] — Work Tel #: ______
Reference Street Address: 515 S Indiana St
Reference City/State/Zip: Anaheim, CA 92805

**COSIGNER INFORMATION** (Must be at least 18 years of age)

Cosigner Name: Raymond Urias — Home Address: 8484 Faucet Ave Las Vegas, NV 89147
Social Security #: [redacted] — Date of Birth: [redacted] — Home Telephone: [redacted]
Have you ever defaulted on a student loan or declared bankruptcy? ☒ No ☐ Yes
Current Employer: QUALITY MACHINE/GAL CONTRACTOR mechanical — Employer Telephone: [redacted]
Current Position: Professional Blue collar — Years There: 12 Years
Years at Previous Employment: 0 Years RU

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box): ☒ U.S. Citizen ☐ Eligible Non-Citizen (Attach front & back copy of CIS)
Note: Personal reference name and address cannot match that of the Student.
Personal Reference Name: Vince Manus — Reference Home Tel #: [redacted] — Work Tel #: ______
Reference Street Address: 687 700 Lakeview Dr
Reference City/State/Zip: Susanville, CA 96130

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement AB.06-07.CSXI.10DC.0206 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

__For purposes of the following notices, "you" means the Borrower and Cosigner, not the Lender.__

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (If applicable) – FAX TO: 800-704-9408

Signature of Borrower Kyle Urias Date 8/12/06

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner Raymond Urias Date 8/12/06

**B9I (Official Form 9I) (Chapter 13 Case) (12/07)** Case Number **10–14632–bam**

UNITED STATES BANKRUPTCY COURT District of Nevada

# Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines

The debtor(s) listed below filed a chapter 13 bankruptcy case on 3/22/10. You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE: The staff of the bankruptcy clerk's office cannot give legal advice. **RENO CASES ONLY: See www.reno13.com for specific meeting times. Important Notice of Individual Debtors:** Debtors who are individuals must provide government–issued photo identification and proof of social security number at the meeting of creditors. Failure to do so may result in dismissal of their case.

See Reverse Side For Important Explanations

Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
RAYMOND URIAS
8484 FAUCET AVENUE
LAS VEGAS, NV 89147 [redacted]

| | |
|---|---|
| Case Number:<br>10–14632–bam<br>Judge: BRUCE A. MARKELL | Social Security/Individual Taxpayer ID/Employer Tax ID/Other nos:<br>xxx–xx–[redacted] |
| Attorney for Debtor(s) (name and address):<br>DAVID KRIEGER<br>HAINES & KRIEGER, L.L.C<br>1020 GARCES AVE.<br>LAS VEGAS, NV 89101<br>Telephone number: (702) 880–5554 | Bankruptcy Trustee (name and address):<br>KATHLEEN A. LEAVITT<br>201 LAS VEGAS BLVD., SO. #200<br>LAS VEGAS, NV 89101<br>Telephone number: (702) 853–0700<br>APR 2 0 2010 |

## Meeting of Creditors

Date: **May 11, 2010** Time: **08:30 AM**
Location: **300 Las Vegas Blvd., South, Room 1500, Las Vegas, NV 89101**

## Deadlines:

Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

### Deadline to File a Proof of Claim:

For all creditors (except a governmental unit): **8/9/10**

For a governmental unit (except as otherwise provided in Fed. R. Bankr. P. 3002 (c)(1)): **180 days after order for relief entered**

### Creditor with a Foreign Address:

A creditor to whom this notice is sent at a foreign address should read the information under "Claims" on the reverse side.

**Deadline to File a Complaint to Determine Dischargeability of Certain Debts: 7/12/10**

### Deadline to Object to Exemptions:

Thirty (30) days after the *conclusion* of the meeting of creditors.

| Pre–Confirmation Meeting | Hearing on Confirmation of Plan |
|---|---|
| Date: **6/17/10** Time: **8:30 AM**<br>Location: **300 Las Vegas Blvd., South, Room 1500, Las Vegas, NV 89101**<br>Objecting parties must attend the pre–confirmation meeting. | Date: **6/17/10** Time: **01:30 PM**<br>Location: **300 Las Vegas Blvd., South, Third Floor, Las Vegas, NV 89101**<br>A written objection must be filed prior to the hearing. |

## Chapter 13 Plan

The Chapter 13 plan, when filed, will be mailed under separate cover and may also be viewed on the U.S. Bankruptcy Court's Pacer system at: www.nvb.uscourts.gov.

## Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor, the debtor's property, and certain codebtors. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

| | |
|---|---|
| **Address of the Bankruptcy Clerk's Office:**<br>300 Las Vegas Blvd., South<br>Las Vegas, NV 89101<br>Telephone number: (702)388–6257 | **For the Court:**<br>Clerk of the Bankruptcy Court:<br>Mary A. Schott<br>Mary A. Schott |
| Hours Open: Monday – Friday 9:00 AM – 4:00 PM | Date: 3/23/10 |

# EXHIBIT "C"

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES – A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

## Client & Report Information

| | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

## Summary of Accounts With Balances

| Account Types | Number of Accounts | Total Monthly Payments | Total of Balances Remaining | Number of Past Due Accounts | Percentage of Accounts Past Due & Total of Amounts Past Due | |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## Graphical Overview of Key Account Data

**Monthly Payment by Type** **Outstanding Balance by Type**

[redacted]

## myHorizon™ Credit Score Analysis

| POWERED BY creditxpert™ | EXISTING CREDIT SCORE | ESTIMATED 12 MONTH POST - BANKRUPTCY CREDIT SCORE* | NET EFFECT |
|---|---|---|---|
| | [redacted] | [redacted] | [redacted] |

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation. CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an "as is" basis, and CreditXpert inc. and its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

## Notes & Alerts

| | |
|---|---|
| File Alert - No Discrepencies | No Alerts or Notes exist for this file. |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Mortgage Liabilities with Balances** — 2 Total Mortgage Account(s) with a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] $0 | | |

**End of Mortgages With Balances**

**Non-Mortgage Liabilities with Balances** — 11 Account(s) with balances

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| Cit [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

## Client & Report Information

| | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

## Non-Mortgage Liabilities with Balances — 11 Account(s) with balances

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type, Last Activity & Past Due $ | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted]-1408 |

**End of Non-Mortgage Accounts With Balances**

## Liabilities without Balances — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| Gmac [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] Plus [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Raymond Urias XXX-XX-[redacted] |
| Secondary Client Name & SSN: | |
| Primary Address: | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| Report Details: | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — **65 Account(s) without a balance**

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] 9501 |
| [redacted] | | | | | | [redacted] |
| | | | | | | [redacted] |
| Aes/nct<br>Comaker / Applicant<br>XXXXXX0001<br>Account is: Open, Government Claim | $0 | $10,869 | 8/2006<br>1/31/2010 | $101<br>Installment<br>1/4/2010 | | 1200 N 7th St<br>Harrisburg, PA 17102<br>800-233-0577 |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] |

[redacted]

[redacted]

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Raymond Urias XXX-XX-[redacted] |
| Secondary Client Name & SSN: | |
| Primary Address: | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| Report Details: | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | | | | | | |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — **65 Account(s) without a balance**

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424
866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

## Client & Report Information

| | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

## Liabilities without Balances

65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|

© CIN Legal Data Services 2005-2009

# Consumer Liability Report

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| | | | | | | |

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424
866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Raymond Urias XXX-XX-[redacted] |
| Secondary Client Name & SSN: | |
| Primary Address: | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| Report Details: | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

**Liabilities without Balances** — 65 Account(s) without a balance

| Account Name, Owner/Type, Account Number & Status | Current Balance | High Credit | Date Opened & Last Reported | Payment Info, Account Type & Last Activity | Corporate Bankruptcy Department - Where Available (2) | Reported Contact Information |
|---|---|---|---|---|---|---|
| [redacted] | | | | | | |

**Public Records** — 0 Public Record(s)

| Court | Disposition | Date Filed | Obligation | Judgement | Docket | Plaintiff | Defendant |
|---|---|---|---|---|---|---|---|

**Address Variations**

[redacted]

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

## Client & Report Information

| | |
|---|---|
| **Primary Client Name & SSN:** | Raymond Urias XXX-XX-[redacted] |
| **Secondary Client Name & SSN:** | |
| **Primary Address:** | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| **Report Details:** | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

## Employment Variations

[redacted]

## Recent Inquiries Into Applicant's Credit

| Company Making Inquiry | Date of Inquiry | Applicant Inquired Upon | Result of Inquiry |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | Unknown |

## CIN Legal Data Services' myHorizon™ Credit Score

* CIN Legal Data Services myHorizon Credit Score, powered by CreditXpert, simulates changes to the credit file to calculate the potential score impact of a Chapter 7 bankruptcy filing. It simulates filing the Chapter 7 bankruptcy immediately, followed 3 months later by discharge of all debt other than student loans and mortgages. It also simulates opening a revolving credit card with a $500 credit limit 2 months after discharge, and then maintaining a balance of $300 on that card for 10 months. The final score is calculated 15 months from now (one year after the bankruptcy discharge). myHorizon assumes that monthly payments will be made on time for mortgages and student loans, and that zero-balance credit accounts will be closed by creditors at the time of discharge. Accounts last reported 4 or more months ago are not included in the bankruptcy filing unless they are derogatory accounts.

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation. CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an "as is" basis, and CreditXpert inc. And its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

Copyright © 2000-2009 CreditXpert Inc. All rights reserved. CreditXpert® is a registered trademark of CreditXpert Inc. The CreditXpert logo is a trademark of CreditXpert Inc.

© CIN Legal Data Services 2005-2009

# CONSUMER LIABILITY REPORT

PROVIDED BY CIN LEGAL DATA SERVICES A CREDIT INFONET SOLUTION

4540 Honeywell Ct.
Dayton, Ohio 45424

866.218.1003 (p)
866.307.1003 (f)

CIN LEGAL DATA SERVICES
A CREDIT INFONET SOLUTION

| Client & Report Information | |
|---|---|
| Primary Client Name & SSN: | Raymond Urias XXX-XX-[redacted] |
| Secondary Client Name & SSN: | |
| Primary Address: | 8484 Faucet Avenue, Las Vegas, NV 89147 |
| Report Details: | Report 1484304 Completed on 2/8/2010 for A2647 - CLR 2 Source |

## Report Footnotes

1 - Monthly Payment Amounts Include Minimum Monthly Payments on Accounts with Outstanding Balances That May Have Recently Been Frozen or Closed by the Original Credit Grantor.

2 - Credit Infonet's Bankruptcy Department Name & Address Notations List Information Was Obtained via Telephone From The Current Creditor by Credit Infonet Staff. Information Verified by Credit Infonet Staff Was Provided by the Creditor As of The "Date Verified" Date Listed Within Each Trade Name and Address Listing. Please note, BAPCPA Language Regarding the Noticing of Creditors May Dictate the Use of a Different Addresst Inc.

© CIN Legal Data Services 2005-2009

# EXHIBIT "D"

**Fill in this information to identify the case:**

Debtor 1 SANDRA JO GUNTER

Debtor 2 (Spouse, if filing) ____

United States Bankruptcy Court for the: ____ District of NV

Case number 20-13002

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

National Collegiate Student Loan Trust 2005-3
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor ____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Name | Transworld Systems Inc | Transworld Systems Inc |
| Number Street | PO BOX 4275 | PO BOX 2402 |
| City | NORCROSS | COLUMBUS |
| State | GA | GA |
| ZIP Code | 30091 | 319022402 |
| Contact phone | (800) 209-9161 | (800) 209-9161 |
| Contact email | | |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):
0 0 0 2 8 1 6 6 7 2 0 1 3 0 0 2

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ____ Filed on ____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? ____

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

- ☐ No
- ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: █ █ █ █

**7. How much is the claim?**

$ 20,656.25

**Does this amount include interest or other charges?**

- ☐ No
- ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money loaned non-dischargeable student loan LOAN 001P

**9. Is all or part of the claim secured?**

- ☑ No
- ☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

- ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
- ☐ Motor vehicle
- ☐ Other. Describe: ______

**Basis for perfection:** ______

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $______

**Amount of the claim that is secured:** $______

**Amount of the claim that is unsecured:** $______ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $______

**Annual Interest Rate** (when case was filed)______%

- ☐ Fixed
- ☐ Variable

**10. Is this claim based on a lease?**

- ☑ No
- ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $______

**11. Is this claim subject to a right of setoff?**

- ☑ No
- ☐ Yes. Identify the property: ______

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 7/21/2020
MM / DD / YYYY

/s/ Lestellia Joyner
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Lestellia (First name) Joyner (Last name)
Middle name:

Title: Vendor Network Representative

Company: Transworld Systems, Inc.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 2 Sun Court, Suite 215 (Number Street)
Norcross (City) GA (State) 30092 (ZIP Code)

Contact phone: (800) 209-9161 Email: TDMBK-Mailroom@tsico.com

# Statement of Account

## Account Information

| Primary Account Holder | Account Number | Creditor Reference | |
|---|---|---|---|
| | 9917 | 0002816672013002 | |
| Secondary Account Holder | Principal | Interest | Fees |
| GUNTER, SANDRA J | 20,482.99 | 173.26 | 0.00 |
| Total Claim Amount | Last Transaction Date | Last Payment Date | Charge-Off Date |
| 20,656.25 | 10/4/2019 | 10/4/2019 | 5/1/2020 |
| Account Open Date | | | |
| 8/3/2005 | | | |

## Creditor Information

| Claimant | Current Creditor |
|---|---|
| National Collegiate Student Loan Trust 2005-3 | National Collegiate Student Loan Trust 2005-3 |
| Previous Creditor | Creditor at Last Account Transaction |
| PNC BANK or predecessor by merger, if applicable | National Collegiate Student Loan Trust 2005-3 |

## Case Information

| Filer(s) | | | |
|---|---|---|---|
| SANDRA JO GUNTER | | | |
| Case No. | Court | Chapter | Filing Date |
| 20-13002 | District of Nevada | 13 | 6/22/2020 |

## Contact Information of Creditor

| Phone | Email | Address | Reference No. |
|---|---|---|---|
| (800) 209-9161 | TDMBK-Mailroom@tsico.com | Po Box 4275<br>Norcross, GA 30091 | 0002816672013002 |

## Payment Information of Creditor

Transworld Systems Inc
Po Box 2402
Columbus, GA 319022402

## Special Notice

***National Collegiate Trust***

Date: 11/3/14

RE:

National Collegiate Master Student Loan Trust-I
National Collegiate Student Loan Trust-2003-1
National Collegiate Student Loan Trust-2004-1
National Collegiate Student Loan Trust-2004-2
National Collegiate Student Loan Trust-2005-1
National Collegiate Student Loan Trust-2005-2
National Collegiate Student Loan Trust-2005-3
National Collegiate Student Loan Trust-2006-1
National Collegiate Student Loan Trust-2006-2
National Collegiate Student Loan Trust-2006-3
National Collegiate Student Loan Trust-2006-4
National Collegiate Student Loan Trust-2007-1
National Collegiate Student Loan Trust-2007-2
National Collegiate Student Loan Trust-2007-3
National Collegiate Student Loan Trust-2007-4

To whom it may concern:

U.S. Bank, as Special Servicer for the above referenced Trust(s), confirms that Transworld Systems Inc. is its Subservicer, authorized to file Proofs of Claim (POC) on behalf of the above Trust(s) with respect of student loans owned by the Trust(s). Transworld Systems Inc. is also the dedicated record custodian with respect to all student loan accounts owned by the Trust(s) and is fully authorized to execute affidavits regarding account documents, verify responses to discovery and provide testimony on behalf of the Trust(s).

Any questions regarding the above referenced processes should be directed to Transworld Systems Inc. at 1-800-209-9161

Sincerely,

U.S. Bank National Association
As Special Servicer to the National Collegiate Student Loan Trust(s)

By:

Brian C Tri
Vice President
Title

Acknowledged,
By: GSS Data Services, Inc.
Not in its individual capacity and solely as administrator for and on behalf of the Trust(s)

By: Kenneth L. Ruggiero

President and CEO
Title

**POOL SUPPLEMENT**
**PNC BANK, N.A.**

This Pool Supplement ("Supplement") is entered into pursuant to and forms a part of that certain Note Purchase Agreement (the "Agreement") dated as of April 22, 2004, as amended, by and between The First Marblehead Corporation ("FMC") and PNC Bank, N.A. ("Program Lender"). This Supplement is dated as of October 12, 2005. Capitalized terms used in this Supplement without definitions have the meaning set forth in the Agreement.

Article 1: Purchase and Sale.

In consideration of the Minimum Purchase Price, Program Lender hereby transfers, sells, sets over and assigns to The National Collegiate Funding LLC (the "Depositor"), upon the terms and conditions set forth in the Agreement (which are incorporated herein by reference with the same force and effect as if set forth in full herein), each PNC Bank Alternative Conforming Loan described in the attached Schedule 2 ("the Transferred PNC Bank Alternative Loans") along with all of Program Lender's rights under the Guaranty Agreement relating to the Transferred PNC Bank Alternative Loans. The Depositor in turn will sell the Transferred PNC Bank Alternative Loans to The National Collegiate Student Loan Trust 2005-3 (the "Trust"). Program Lender hereby transfers and delivers to the Depositor each PNC Bank Alternative Note evidencing such PNC Bank Alternative Conforming Loan and all Origination Records relating thereto, in accordance with the terms of the Agreement. The Depositor hereby purchases said PNC Bank Alternative Notes on said terms and conditions.

Article 2: Price.

The amount paid pursuant to this Supplement is the Minimum Purchase Price, as that term is defined in Section 2.04 of the Agreement.

Article 3: Representations and Warranties.

3.01. By Program Lender.

Program Lender repeats the representations and warranties contained in Section 5.02 of the Agreement for the benefit of each of the Depositor and the Trust and confirms the same are true and correct as of the date hereof with respect to the Agreement and to this Supplement.

3.02. By Depositor.

The Depositor hereby represents and warrants to the Program Lender that at the date of execution and delivery of this Supplement by the Depositor:

(a) The Depositor is duly organized and validly existing as a limited liability company under the laws of the State of Delaware with the due power and authority to own its properties and to conduct its business as such properties are currently owned and such business is presently conducted, and had at all relevant times, and has, the power, authority and legal right to acquire and own the Transferred PNC Bank Alternative Loans.

(b)     The Depositor is duly qualified to do business and has obtained all necessary licenses and approvals, in all jurisdictions in which the ownership or lease of property or the conduct of its business shall require such qualifications.

(c)     The Depositor has the power and authority to execute and deliver this Pool Supplement and to carry out its respective terms; the Depositor has the power and authority to purchase the Transferred PNC Bank Alternative Loans and rights relating thereto as provided herein from the Program Lender and the Depositor has duly authorized such purchase from the Program Lender by all necessary action; and the execution, delivery and performance of this Pool Supplement has been duly authorized by the Depositor by all necessary action on the part of the Depositor.

(d)     This Pool Supplement, together with the Agreement of which this Supplement forms a part, constitutes a legal, valid and binding obligation of the Depositor, enforceable in accordance with its terms.

(e)     The consummation of the transactions contemplated by the Agreement and this Supplement and the fulfillment of the terms hereof do not conflict with, result in any breach of any of the terms and provisions of, or constitute (with or without notice or lapse of time) a default under, the governing instruments of the Depositor or any indenture, agreement or other instrument to which the Depositor is a party or by which it is bound; or result in the creation or imposition of any lien upon any of its properties pursuant to the terms of any such indenture, agreement or other instrument; or violate any law or any order, rule or regulation applicable to the Depositor of any court or of any federal or state regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties.

(f)     There are no proceedings or investigations pending, or threatened, before any court, regulatory body, administrative agency or other governmental instrumentality having jurisdiction over the Depositor or its properties: (1) asserting the invalidity of the Agreement or this Pool Supplement, (2) seeking to prevent the consummation of any of the transactions contemplated by the Agreement or this Pool Supplement, or (3) seeking any determination or ruling that is likely to materially or adversely affect the performance by the Depositor of its obligations under, or the validity or enforceability of the Agreement or this Pool Supplement.

Article 4:  Cross Receipt.

Program Lender hereby acknowledges receipt of the Minimum Purchase Price. The Depositor hereby acknowledges receipt of the Transferred PNC Bank Alternative Loans included in the Pool.

Article 5:  Assignment of Origination, Guaranty and Servicing Rights.

Program Lender hereby assigns and sets over to Depositor any claims it may now or hereafter have under the Guaranty Agreement, the Origination Agreement, and the Servicing Agreement to the extent the same relate to the Transferred PNC Bank Alternative Loans described in Schedule 2, other than any right to obtain servicing after the date hereof. It is the intent of this provision to vest in Depositor any claim of Program Lender relating to defects in origination, guaranty, or servicing of the loans purchased hereunder in order to permit Depositor to assert such claims directly and obviate any need to make the same claims against Program Lender under this Supplement.

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By: ______________________
Name: John A. Hupalo
Title: Executive Vice President

PNC BANK, N.A.

By: ______________________
Name:
Title:

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: ______________________
Name: Donald R. Peck
Title: Treasurer and Secretary

IN WITNESS WHEREOF, the parties have caused this Supplement to be executed as of the date set forth above.

THE FIRST MARBLEHEAD CORPORATION

By:________________________
Name:
Title:

PNC BANK, N.A.

By: [signature]
Name: CINDY DEHLS
Title: VICE PRESIDENT PORTFOLIO OVERSIGHT

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By:________________________
Name:
Title:

## * *Cosigned* * Loan Request/Credit Agreement – Information Page

NON-NEGOTIABLE CREDIT AGREEMENT – THIS IS A CONSUMER CREDIT TRANSACTION

**LOAN PROGRAM INFORMATION**

ACT III Graduate Student Loans — Academic Period: 08/2005-08/2006

Lender: PNC Bank, N.A. — School: COLLEGE OF SOUTHERN IDAHO

Loan Amount Requested: $20000.00 — Repayment Option: Deferred Principal and Interest

Deferral Period Margin: 4.65 — Repayment Period Margin: 4.65 — Loan Origination Fee Percentage: 6.50

**STUDENT BORROWER INFORMATION** (Must be at least 18 years of age)

Borrower Name: Stephanie J Gunter — Home Address: 383 Tibbets West Wendover, NV 89883

Social Security #: [redacted] — Date of Birth: [redacted]987 — Home Telephone: [redacted]

Student Citizenship (check one box): ☒ U.S. Citizen ☐ Eligible Non-Citizen (Attach front & back copy of INS or student visa card)
Note: Personal reference name and address cannot be that of the Cosigner or match the reference information that the Cosigner provides.
Personal Reference Name: Peggy L Gunter — Reference Home Tel #: (208) 232-7663 — Work Tel #: ______
Reference Street Address: 1720 Ardella
Reference City/State/Zip: Pocatello, ID 83201

**COSIGNER INFORMATION** (Must be at least 18 years of age)

Cosigner Name: Sandra J Gunter — Home Address: 383 Tibbets West Wendover, NV 89883

Social Security #: [redacted] — Date of Birth: [redacted]1965 — Home Telephone: 7756642941

Have you ever defaulted on a student loan or declared bankruptcy? ☒ No ☐ Yes
Current Employer: CITY OF WEST WENDOVER — Employer Telephone: 7756643081
Current Position: Other — Years There: 11 Years 9 Months
Years at Previous Employment:

**Alimony, child support, or separate maintenance incomes do not have to be revealed if you do not want them considered for repaying this obligation. If you are relying on such additional income, please provide details on a separate sheet of paper.**

Cosigner Citizenship (check one box): ☒ U.S. Citizen ☐ Eligible Non-Citizen (Attach front & back copy of INS)
Note: Personal reference name and address cannot be that of the Student or match the reference information that the Student provides.
Personal Reference Name: Loraine Larsen — Reference Home Tel #: [redacted] — Work Tel #: ______
Reference Street Address: 5110 Dorian
Reference City/State/Zip: Pocatello, ID 83202

**Borrower and Cosigner: Read and, where indicated, sign and date the next page.**

2005 JUL 28 A 8:44

## * *Cosigned* * Loan Request/Credit Agreement – Signature Page

By my signature, I certify that I have read, understand and agree to the terms of and undertake the obligations set forth on all five (5) pages of this Loan Request/Credit Agreement PC.04-05.CSX1.10DC.0204 ("Credit Agreement"). I understand that any person who knowingly makes a false statement or misrepresentation on this form is subject to penalties, which may include fines or imprisonment. This Credit Agreement is signed under seal. I understand that I am not required to fax my signature on nor to sign electronically this Credit Agreement and any related notices that require signature. If I choose to fax my signature on or to sign electronically this Credit Agreement and any related notices that require signature, I intend: (i) my fax or electronic signature to be an electronic signature under applicable federal and state law, (ii) any fax printout or printout of Lender's electronic record of this Credit Agreement and related notices to be an original document, (iii) to conduct business with the Lender by electronic records and electronic signatures, and (iv) that this Credit Agreement will not be governed by Article 3 of the Uniform Commercial Code, and my obligations under this Credit Agreement will not be subject to, but any transfer of my obligations will be subject to, Article 9 of the Uniform Commercial Code.

**FOR ALABAMA RESIDENTS: CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

**FOR WISCONSIN RESIDENTS - NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS CREDIT AGREEMENT BEFORE YOU READ THE WRITING ON THE FOLLOWING PAGES, EVEN IF OTHERWISE ADVISED.**
**(b) DO NOT SIGN THIS CREDIT AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**
**(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.**
**(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE UNDER THIS CREDIT AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.**

**FOR OBLIGORS COSIGNING IN WEST VIRGINIA - NOTICE TO COSIGNER: You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay it if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record. This notice is not the contract that makes you liable for the debt.**

Signature of Cosigner ____________ Date ____________

**PLEASE SIGN BELOW – RETURN This Page With Proof of Income and Other Information (if applicable) – FAX TO: 800-704-9406.**

Signature of Borrower Stephanie Gunter Date 7-27-05

**BY SIGNING THIS CREDIT AGREEMENT BELOW, I CERTIFY THAT I INTEND TO (i) APPLY FOR JOINT CREDIT AND (ii) BE JOINTLY LIABLE WITH THE BORROWER FOR THIS LOAN.**

Signature of Cosigner Sandra Gunter Date 7-28-05

# Notice to Cosigner

## SUPPLEMENT TO LOAN REQUEST/CREDIT AGREEMENT for IOWA, NEW YORK, AND SOUTH CAROLINA RESIDENTS

You agree to pay the debt identified below although you may not personally receive the education or money. You may be sued for payment although the person who receives the education or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the Credit Agreement or contract. You will also have to pay some or all of these costs and charges if the Credit Agreement or contract, the payment of which you are guaranteeing requires the borrower to pay such costs and charges.

**This notice is not the note that obligates you to pay the debt.**
Read the Credit Agreement for the exact terms of your obligation.

**IDENTIFICATION OF DEBT YOU MAY HAVE TO PAY**

Stephanie J Gunter
(Name of Student Borrower)

[redacted]
(Social Security Number of Student Borrower)

PNC Bank
(Name of Lender)

If the loan is disbursed by check, the date of the check. If the loan is disbursed electronically, the date the creditor transmits the funds to the School.
(Date)

PNC Bank Alternative Education Loan
(Kind of Debt)

$Will be disclosed to you
(Total of Payments)

I have kept a complete copy of this notice and the Credit Agreement that obligates me and the Student Borrower on this debt.

7-28-05
(Date)

[signature]
(Signature of Non-Student Cosigner)

**Cosigner: If you are a resident of Iowa, New York, or South Carolina, please SIGN, DATE, and RETURN an original of this notice with the Signature Page of this Credit Agreement and other requested documents.**

# NOTE DISCLOSURE STATEMENT

$ 21,390.37
03135786
Loan No.

Borrower(s) STEPHANIE J GUNTER
SANDRA J GUNTER

Student: STEPHANIE J GUNTER
Date: August 3, 2005

STEPHANIE J GUNTER
PO BOX 3133
WEST WENDOVER , NV 89883

Lender Name and Address:
PNC BANK N.A.
ONE PNC PLAZA 249 FIFTH AVE
PITTSBURGH, PA 15222

This disclosure statement relates to your Loan Note disbursed on August 3, 2005
Because your Loan is either being disbursed or entering repayment, or the repayment terms are being modified, the following information about your Loan is being given to you.

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments scheduled. |
| 8.232 % | $ 39,078.40 | $ 20,000.00 | $ 59,078.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are due |
|---|---|---|
| 240 | $ 246.16 | On the 3rd day of each month beginning on 3/2010 |
| | | |
| | | |
| | | |

**VARIABLE RATE:** The Annual Percentage Rate, which is based on an index plus a margin, may increase during the term of the loan if the index rate increases. The index is (check one):

☐ **Prime Rate Index Adjusted Monthly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar month.

☐ **Prime Rate Index Adjusted Quarterly** - The highest U.S. bank prime rate published in the "Money Rates" section of The Wall Street Journal on the last business day of each calendar quarter.

☒ **LIBOR Index Adjusted Quarterly** - The average of the one-month London Interbank Offered Rates published in the "Money Rates" section of The Wall Street Journal on the first business day of each of the three (3) calendar months immediately preceding the first day of each calendar quarter.

Any increase in the index and the Annual Percentage Rate which occurs while principal payments are deferred will increase the amount of any current and all future payments. Any increase in the index and the Annual Percentage Rate which occurs while principal and interest payments are deferred will increase the amount of all future payments. Any increase in the index and the Annual Percentage Rate which occurs after you have begun to make principal and interest payments on your loan will increase the amount of your future principal and interest payments beginning with your next annual payment adjustment date. For example, assume you obtain a loan in your junior year, in the amount of $10,000, at an interest rate of 11%, and you defer principal and interest payments until after your graduation, and the repayment term of the loan is 20 years. If the interest rate increased to 12% on January 1st of your senior year, the interest which accrues while principal and interest payments are deferred will increase by $ 91.01, and your monthly principal and interest payments would increase by $ 9.37.

**SECURITY:** You have given a security interest in all refunds or amounts owed to you at any time by the student's educational institution. Collateral securing other loans with the Lender may also secure this Loan.
**LATE CHARGES:** If a payment is more than 15 days late, you may be charged $5.00 or 5% of the payment, whichever is less. If you default, Lender (or any subsequent holder or any subsequent holder of your Loan Note) may increase the margin used to compute the Annual Percentage Rate by two percentage points (2%).
**PREPAYMENT:** If you pay off early, you will not have to pay a penalty.

See your contract documents for any additional information about non-payment, default, any required repayment in full before the scheduled date, any security interest and prepayment refunds and penalties.

**Estimates:** All numerical disclosures except the late payment disclosure are estimates.

Principal Amount of Note (Amount Financed plus Prepaid Finance Charge) $ 21,390.37

Itemization of Amount Financed
Amount paid to STEPHANIE J GUNTER and $
Amount paid to SANDRA J GUNTER $ 20,000.00
Total Amount Financed $ 20,000.00

Itemization of Prepaid Finance Charge
Origination Fee $ 1,390.37
Total Prepaid Finance Charge(s) $ 1,390.37

# EXHIBIT "E"

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Client Overview

**Name:** **Michael Gunter**
**SSN:** XXX-XX-[redacted]
**Address:** 601 E Fairway Rd
Henderson, NV 89015

**Name:** **Sandra Gunter**
**SSN:** XXX-XX-[redacted]
**Address:** 601 E Fairway Rd
Henderson, NV 89015

## Credit Score Analysis[1]

Powered By creditxpert

| Client | Current Score | 12 Month Post-bankruptcy Credit Score | Net Credit Score Effect |
|---|---|---|---|
| Michael Gunter | [redacted] | [redacted] | [redacted] |
| Sandra Gunter | [redacted] | [redacted] | [redacted] |

This **Preferred Bankruptcy Credit Report** includes information reported from:  
Experian
TransUnion
LexisNexis

## Summary of Accounts with Balances

| Account Type | Number of Accounts | Total Monthly Payments | Total of Balances Remaining | Past Due Accounts | Percentage of Past Due Accounts | Total Amounts Past Due |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## Alerts

2 Record(s)

| Alert Message | Source | Owner |
|---|---|---|
| SSN MATCH: EXACT MATCH BETWEEN SSN ON INPUT AND SSN ON FILE | TU | 1 |
| SSN MATCH: EXACT MATCH BETWEEN SSN ON INPUT AND SSN ON FILE | TU | 2 |

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services
4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

**Report Type:** Joint Preferred BCR **Report Number:** 5818558 **Client Code:** A2647 **Reported Date:** 03/17/2020

## Address Variations

12 Record(s)

| Reported Address | Date Reported | Source | Owner |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] | [redacted] |

[redacted] Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)
© 2020 CINgroup. All Rights Reserved
Page 2 of 12

# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

**Report Type:** Joint Preferred BCR **Report Number:** 5818558 **Client Code:** A2647 **Reported Date:** 03/17/2020

## Employment Variations

7 Record(s)

| Reported Employment | Date Reported | Source | Owner |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| RETIRED WEST WENDOVER POLICE D | 08/02/2014 | TU | [redacted] |

## 8-Year Supplemental National Bankruptcy Search

0 Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Source | Owner |
|---|---|---|---|---|---|---|---|---|

## Liens and Judgments Search

0 Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant | Source | Owner |
|---|---|---|---|---|---|---|---|---|---|

## Public Records Search

0 Record(s)

| Court | Disposition | Date Filed | Obligation | Type | Docket | Plaintiff | Defendant | Source | Owner |
|---|---|---|---|---|---|---|---|---|---|

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2020 CINgroup. All Rights Reserved



# Bankruptcy Credit Report™ | Preferred

CIN LEGAL Data Services
4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Mortgage Liabilities with Balances

1 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## [redacted] Mortgage Liabilities with Balances

11 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| **Name:** Aes/nct<br>**Type:** Joint Contractual Liability / Co-Applicant<br>**Account:** XXXXXXXXXXXXX0001<br>**Status:** Open<br>**Term:** 240 Months<br>Installment, Educational | **Current:**<br>$20,301<br>**High Credit:**<br>$21,390 | **Date Opened:**<br>08/2005<br>**Last Reported:**<br>02/29/2020<br>**Last Activity:**<br>10/04/2019 | **Monthly:**<br>$255<br>**Past Due:**<br>$1,048<br>**Pay History:**<br>321CC------- | Aes/nct<br>Attn: Bankruptcy<br>PO Box 2461<br>Harrisburg, PA 17105<br>**Verified:**<br>07/2019 | Pob 61047<br>Harrisburg, PA 17106<br>800-233-0557 | [redacted] TU, EX |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted] Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Non-Mortgage Liabilities with Balances

11 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | TU, EX |
| | | | | | | TU |

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL Data Services
4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Non-Mortgage Liabilities with Balances

11 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

## [redacted] without Balances

12 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |

[redacted] Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Liabilities without Balances

12 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | 0 | | | TU, EX |
| | | | | | | |

Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Liabilities without Balances

12 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

© 2020 CINgroup. All Rights Reserved



# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## Liabilities without Balances

12 Record(s)

| Account Details | Balance Details | Account Dates | Payment Details | Bankruptcy-Specific Address | Bureau Reported Address | Owner & Source |
|---|---|---|---|---|---|---|

**Note:** Source represents who reported the specific account. **(TU = TransUnion, EQ = Equifax, EX = Experian, LN = LexisNexis)**. For a full explanation of each category, see "How to read a tradeline" at the end of this report.

Need assistance? Call us at **1-866-218-1003** (Monday - Friday, 8am - 8pm ET)

© 2020 CINgroup. All Rights Reserved

Page 9 of 12

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

## How to read a tradeline

| 1 Account Details | 2 Balance Details | 3 Account Dates | 4 Payment Details | 5 Bankruptcy Specific Reported Address | 6 Bureau Reported Address | 7 Owner & Source |
|---|---|---|---|---|---|---|
| **Name:** Sample Creditor<br>**Type:** Individual / Applicant<br>**Account:** XXXXXXX23456<br>**Status:** Open, Fixed Rate Installment | **Current:** $22,908<br>**High Credit:** $24,475 | **Date Opened:** 07/12/2013<br>**Last Reported:** 07/27/2015<br>**Last Activity:** 06/15/2015 | **Monthly:** $50<br>**Past Due:** $100<br>**Pay History:** 21111CC1C1C2 | Sample Creditor<br>123 Sample Street<br>Sample, Ohio 12345<br>800-722-0983<br>**Verified:** 09/2014 | Sample Creditor<br>1 Sample Pkwy<br>Sample, Ohio 54321 | 1 TU, EX, EQ<br>2 EX, EQ |

Note: The information on this tradeline is ficticious and used for example purposes only.

**1. Account Details:**
The **Name** field is the creditor's name as reported by the bureaus. Ownership **Type** displays if the account is individual or joint, as well as the debtors relationship to the liability. **Account** contains the actual account number reported for the tradeline, hashed out for privacy. **Status** displays the most current status reported by the bureaus, examples include Open, Current / Open, Collection / Closed, Purchased By Another Lender. Followed by the Credit Loan Type which describes the nature of the loan. For a collection account, when the creditor provides original creditor information to the bureaus, it will be listed in this section under **Original Creditor**.

**2. Balance Details:**
The last reported balance provided to the bureaus will be displayed as **Current**. **High Credit** is the highest balance ever reported throughout the tradeline's lifetime.

**3. Account Dates:**
**Date Opened** is the date the account was opened. **Last Reported** is the date the tradeline was last reported to the bureaus. **Last Activity** is the last time *any* activity occurred on the account. That activity covers a wide range and includes transactions, payments, and disputes.

**4. Payment Details:**
The expected regular payment due each month is listed as **Monthly**. **Past Due** is the amount the tradeline is past due as of the last reported date. **Pay History** displays the monthly payment history for that account. The number of months may vary from tradeline to tradeline. Each month is represented by a letter or number. The far left digit represents the most current reported month. **C** = Paid as agreed, **1** = 30 days past due, **2** = 60 days past due, **3** = 90 days past due, **4** = 120 days past due, **5** = 150 days past due, **6** = 180 days past due, **8** = Repossession, **9** = Collection, - = No history.

**5. Bankruptcy-Specific Address:**
The **Bankruptcy-Specific Address** is listed for creditor noticing. CIN Legal Data Services continually updates this database by creditor frequency, type, and recency. **Verified** displays the month and year the address was updated.

**6. Bureau Reported Address:**
The generic creditor contact address provided by the bureau is displayed in the **Bureau Reported Address** field.

**7. Owner* & Source:**
**Owner** is populated with the responsible party reported by the bureau for each tradeline. **Source** is the bureau that has provided CIN Legal Data Services with information for the tradeline, abbreviated as follows: TU = TransUnion, EQ = Equifax, EX = Experian). If supplemental information was provided by LexisNexis, it will be also be listed in the Source field abbreviated as LN.
** Owner only applies to Joint reports*

 © 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

CIN LEGAL
Data Services

*Prepared for Haines & Krieger, LLC*

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

**BANKRUPTCY CREDIT REPORT NOTICES:**

[1] CIN Legal Data Services' Credit Score Analysis, powered by CreditXpert, simulates changes to the credit file to calculate the potential score impact of a Chapter 7 bankruptcy filing. It simulates filing the Chapter 7 bankruptcy immediately, followed 3 months later by discharge of all debt other than student loans and mortgages. It also simulates opening a revolving credit card with a $500 credit limit 2 months after discharge, and then maintaining a balance of $300 on that card for 10 months. The final score is calculated 15 months from now (one year after the bankruptcy discharge). myHorizon assumes that monthly payments will be made on time for mortgages and student loans, and that zero-balance credit accounts will be closed by creditors at the time of discharge. Accounts last reported 4 or more months ago are not included in the bankruptcy filing unless they are derogatory accounts.

CreditXpert® products are based on information derived from credit reports produced by the major credit reporting agencies. CreditXpert Inc. is not responsible for inaccurate results, including any due to incorrect, missing, outdated credit report information or incorrect assumptions about the future. Scores and score changes predicted by CreditXpert products are only estimates and are not guaranteed. CreditXpert Inc. does not represent that CreditXpert Credit Scores(tm) are identical or similar to credit scores produced by any other company. CreditXpert Inc. is not associated with Fair Isaac Corporation. CreditXpert Inc. is not a credit counseling or a credit repair organization.

The foregoing is not intended to provide or imply warranties of any kind. CreditXpert products are provided on an "as is" basis, and CreditXpert inc. and its distributors disclaim any and all warranties, either express or implied, including but not limited to any warranty of merchantability, fitness for a particular purpose, non-infringement, system integration, non-interference and/or accuracy of informational content.

Copyright © 2000-2020 CreditXpert Inc. All rights reserved. CreditXpert® is a registered trademark of CreditXpert Inc. The CreditXpert logo is a trademark of CreditXpert Inc.

Monthly payment amounts include minimum monthly payments on accounts with outstanding balances that may have recently been frozen or closed by the original credit grantor.

CIN Legal Data Services Bankruptcy-Specific Address Information was obtained via telephone from the current creditor by CIN Legal Data Services Staff. Information verified by CIN Legal Data Services Staff was provided by the creditor as of the "Verified" date listed within each trade name and address listing. Please note, BAPCPA language regarding the noticing of creditors may dictate the use of a different address.

The 8-Year Supplemental National Bankruptcy Search and the Liens/Judgments Search products are not provided by "Consumer Reporting Agencies" as that term is defined in the FCRA. Judgments, liens and other public records being reported by the national credit bureaus accessed in compiling this credit report will appear in the "Public Records" section.

Data from this credit report can be imported into participating bankruptcy forms preparation software products for thirty (30) days from the Reported Date as shown in the Report header of each page. After thirty (30) days, the import function will no longer be available for this credit report.

**FCRA Notice.** Para informaci6n en español, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington DC 20552.

**A Summary of Your Rights Under the Fair Credit Reporting Act**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- You must be told if information in your file has been used against you. Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.
- You have the right to know what is in your file. You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if: •a person has taken adverse action against you because of information in your credit report; •you are the victim of identity theft and place a fraud alert in your file; •your file contains inaccurate information as a result of fraud; •you are on public assistance; or •you are unemployed but expect to apply for employment within 60 days.
- In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.
- You have the right to ask for a credit score. Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.
- You have the right to dispute incomplete or inaccurate information. If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.
- Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information. Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

Need assistance? Call us at 1-866-218-1003 (Monday - Friday, 8am - 8pm ET)

© 2020 CINgroup. All Rights Reserved

# Bankruptcy Credit Report™ | Preferred

4540 Honeywell Court
Dayton, OH 45424
www.cinlegal.com

*Prepared for Haines & Krieger, LLC*

| **Report Type:** Joint Preferred BCR | **Report Number:** 5818558 | **Client Code:** A2647 | **Reported Date:** 03/17/2020 |
|---|---|---|---|

•Consumer reporting agencies may not report outdated negative information. In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.
•Access to your file is limited. A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.
•You must give your consent for reports to be provided to employers. A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.
•You may limit "prescreened" offers of credit and insurance you get based on information in your credit report. Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.
•You may seek damages from violators. If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.
•Identity theft victims and active duty military personnel have additional rights. For more information, visit www.consumerfinance.gov/learnmore.
•States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General.
•**For Information about your Federal rights contact:**
**1. a.** Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates: Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20552; **b.** Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.
**2.** To the extent not included in item 1 above: **a.** National banks, federal savings associations and federal branches and federal agencies of foreign banks: Office of the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050; **b.** State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies and Insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act: Federal Reserve Consumer Help Center, PO Box 1200,Minneapolis, MN 55480; **c.** Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations: FDIC Consumer Response Center, 1100 Walnut St., Box #11,Kansas City, MO 64106; **d.** Federal Credit Unions: National Credit Union Administration, Office of Consumer Protection (OCP), Division of Consumer Compliance and Outreach (DCCO), 1775 Duke Street, Alexandria, VA 22314.
**3.** Air carriers: Asst. General Counsel for Aviation Enforcement & Proceedings, Aviation Consumer Protection Division, Department of Transportation, 1200 New Jersey Avenue, S.E., Washington, DC 20590.
**4.** Creditors Subject to Surface Transportation Board: Office of Proceedings, Surface Transportation Board, Department of Transportation 395 E Street, S.W., Washington, DC 20423.
**5.** Creditors Subject to Packers and Stockyards Act, 1921: Nearest Packers and Stockyards Administration area Supervisor.
**6.** Small Business Investment Companies: Associate Deputy Administrator for Capital Access, United States Small Business Administration, 409 Third Street, SW, 8th Floor, Washington, DC 20416.
**7.** Brokers and Dealers: Securities and Exchange Commission, 100 F Street, N.E., Washington, DC 20549.
**8.** Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks and Production Credit Associations: Farm Credit Administration, 1501 Farm Credit Drive, McLean, VA 22102-5090.
**9.** Retailers, Finance Companies, and All Other Creditors Not Listed Above: FTC Regional Office for region in which the creditor operates or Federal Trade Commission: Consumer Response Center – FCRA, Washington, DC 20580, (877) 382-4357.

To Dispute Information Appearing in This Report: Send the following information by email to **consumer@cingroup.com** or by postal mail to **CIN Legal Data Services, ATTN: Consumer Disputes, 4540 Honeywell Court, Dayton, OH 45424**: **1.** Your complete name, address, and telephone number. **2.** The "Report Number" and "Reported Date" located at the top right corner of the first page of the credit report. **3.** The name and account number for any creditor whose data you are disputing. Explain why you feel the creditor's information is incorrect. **4.** A request that the information you are disputing be removed or corrected. **5.** Copies (not originals) of any documents that support your position. Within 5 days of receiving your dispute, CIN Legal Data Services ("CIN") will investigate the dispute and will notify all of the three nationwide credit reporting agencies (Experian, TransUnion, and Equifax) that are reporting the disputed information. The credit reporting agencies have 30 days in which to investigate your dispute and send their investigation results to CIN. CIN will mail you a copy of each credit reporting agencies' investigation results within 1 business day of receiving the same from the agencies.

 © 2020 CINgroup. All Rights Reserved